[No. 2846–3.  Division Three.  September 26, 1978.]

*In the Matter of the Personal Restraint of*
RICKY LYNN LALANDE, *Petitioner.*

*Ricky Lynn LaLande,* pro se.

*Slade Gorton, Attorney General,* and *Nate Mannakee, Assistant,* for respondent.

MUNSON, C.J.—Ricky Lynn LaLande seeks release from confinement at the state penitentiary on the grounds (1) he has been held beyond his minimum term as established by the Board of Prison Terms and Paroles; and (2) he was

denied due process because the Board failed to give him a hearing at the end of the minimum term.

Mr. LaLande was convicted in Yakima County of second-degree burglary and sentenced to a maximum term of 15 years. He was paroled on July 24, 1975, but that parole was subsequently revoked because he refused to complete mental health treatment at Eastern State Hospital. The Board then established a new minimum sentence and authorized parole on April 5, 1976, "to a Board approved plan, provided good time is certified."

On January 30, 1976, Mr. LaLande submitted a plan for parole to Progress House in Tacoma where he could receive mental health treatment. The plan was considered unacceptable by the Board because there was no vacancy at Progress House and he had no residence or job in Tacoma. He was advised to submit an alternate plan. On March 29, 1976, he submitted a plan for parole to the Yakima area where he would live with a friend, but that plan was rejected because there was no adequate mental health facility in the area. Mr. LaLande has not submitted any other plans.[1]

Nonetheless, on July 27, 1976, the prison staff on its own initiative investigated the Tacoma plan. The Board found it unacceptable as before but suggested a parole possibility if Mr. LaLande would apply for admission into a Salvation Army program there. There is nothing in the record to show Mr. LaLande applied. In March of this year, the

---

[1]Adequate mental health treatment facilities and a structural environment have consistently been recommended as conditions for Mr. LaLande's parole. *See* RCW 72.04A.070, which provides:

"The director of institutions through the supervisor of the division of probation and parole of the department of institutions shall cause to be prepared plans and recommendations for the conditions of supervision under which each inmate of any state penal institutions who is eligible for parole may be released from custody. Such plans and recommendations shall be submitted to the board of prison terms and paroles which may, at its discretion, approve, reject, or revise or amend such plans and recommendations for the conditions of supervision of release of inmates on parole, and, in addition, the board may stipulate any special conditions of supervision to be carried out by a probation and parole officer."

Board again considered the Yakima plan, but it was rejected for lack of an adequate mental health plan. Mr. LaLande was advised to consult a parole planning counselor and submit an alternate plan. In May, another pre-parole investigation was conducted, this time concerning possible parole to a Seattle program with a residence in Yakima. Neither part of the plan was considered possible. Since then, there is no record of further parole release activity.

■ Mr. LaLande's first contention—that he is entitled to release at the end of the minimum term established by the Board of Prison Terms and Paroles—is without merit. As the court said in *Lindsey v. Superior Court,* 33 Wn.2d 94, 104–05, 204 P.2d 482 (1949):

> The discharge or release from imprisonment of a convicted person serving a maximum sentence is not, prior to the expiration of his maximum term, a matter of right, but is a matter of discretion with the board of prison terms and paroles. Such prisoner may not be released from the penitentiary or the reformatory unless, in the opinion of the board of prison terms and paroles, his rehabilitation has been complete and he is a fit subject for release, or else until his maximum term has expired.

*Accord, January v. Porter,* 75 Wn.2d 768, 453 P.2d 876 (1969); *Butler v. Cranor,* 38 Wn.2d 471, 230 P.2d 306 (1951); *Pierce v. Smith,* 31 Wn.2d 52, 195 P.2d 112 (1948); *State ex rel. Linden v. Bunge,* 192 Wash. 245, 73 P.2d 516 (1937). Thus, there is no right to release from confinement at the end of the minimum term.[2]

The second question—whether Mr. LaLande is entitled to a hearing at the end of his minimum term when he has not been granted parole—is a question of first impression.

---

[2]RCW 9.95.100 provides:

"Any convicted person undergoing sentence in the penitentiary or the reformatory, not sooner released under the provisions of this chapter, shall, in accordance with the provisions of law, be discharged from custody on serving the maximum punishment provided by law for the offense of which such person was

Due process does attach to the cancellation of an established tentative parole release date. *Monohan v. Burdman,* 84 Wn.2d 922, 530 P.2d 334 (1975). However, in that case, the court carefully limited its holding to situations where the tentative parole release date was canceled *for reasons other than inability to develop an acceptable parole rehabilitation plan.* Specifically, the court phrased the issue thusly:

> The precise question posed here is whether the right of minimal due process hearings, as guarantied [*sic*] to probationers and parolees . . . should be accorded to proceedings leading up to the cancellation of a previously established, tentative parole release date for reasons other than inability to develop an acceptable parole rehabilitation plan.

(Citations omitted.) *Monohan v. Burdman, supra* at 926. Three times more in the *Monohan* opinion, the court carefully limited due process protection to cancellation of a tentative parole release date on *grounds other than the failure to provide an adequate plan.*

Under these circumstances, the only reason for the failure of Mr. LaLande to attain parole release is his inability to present an acceptable plan. Due process protections do not extend to the Board's action here in light of *Monohan.*

---

convicted, or the maximum term fixed by the court where the law does not provide for a maximum term. *The board shall not, however, until his* maximum term expires, release a prisoner, unless in its opinion his rehabilitation has been complete and he is a fit subject for release." (Italics ours.)

RCW 9.95.110 provides:

"The board of prison terms and paroles may permit a convicted person to leave the buildings and enclosures of the penitentiary or the reformatory on parole, after such convicted person has served the period of confinement fixed for him by the board, less time credits for good behavior and diligence in work: *Provided,* That in no case shall an inmate be credited with more than one-third of his sentence as fixed by the board.

"The board of prison terms and paroles may establish rules and regulations under which a convicted person may be allowed to leave the confines of the penitentiary or the reformatory on parole, and may return such person to the confines of the institution from which he was paroled, at its discretion."

382

Mr. LaLande's petition for release from personal restraint is dismissed.

McINTURFF and ROE, JJ., concur.