[No. 46357.   En Banc.   October 2, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. JIMMY FAIN, *Petitioner.*

*William L. Denend* and *Michael A. Dunn,* for petitioner.

*C. Danny Clem, Prosecuting Attorney,* and *Kenneth G. Bell* and *Warren K. Sharpe, Deputies,* for respondent.

WILLIAMS, J.—Petitioner Jimmy Fain was found by a jury to be a habitual criminal under RCW 9.92.090. The trial court sentenced him to a term of life imprisonment pursuant to the statute, and he is currently serving that sentence in the state reformatory at Monroe. Following his conviction, he appealed his sentence to the Court of Appeals, asserting that, under the circumstances of his case,

life in prison constitutes cruel and unusual punishment in violation of the eighth amendment to the United States Constitution and Const. art. 1, § 14. The Court of Appeals affirmed the judgment and sentence. We granted Fain's petition for review, and we now reverse the Court of Appeals.

I

In 1960, the State of Washington charged Fain with grand larceny stemming from an incident in which he wrote a check for $30 on insufficient funds. Upon Fain's entry of a guilty plea, the court deferred imposition of the sentence and placed him on probation for 2 years.[1]

In 1965, Fain pleaded guilty to a California forgery charge in which it was alleged that he had taken some blank checks from a friend, written a check for $30 to a service station, and signed the friend's name on the check. He served approximately 1 1/2 years in a California prison on that conviction.

Twelve years after the California conviction, in 1977, the State of Washington charged Fain with theft in the second degree, RCW 9A.56.020(1)(b); RCW 9A.56.040(1)(a); RCW 9A.56.010(12)(c). The amended information alleged that during the period between December 22, 1976, and May 18, 1977, Fain had obtained property and services of others by writing 24 checks payable to various businesses. The checks were drawn on an account opened on December 1, 1976, and closed on January 14, 1977. Except for one $40 check, no individual check was written for an amount in excess of $30, and the sum of the value of all the checks was approximately $408. A jury convicted Fain of second degree theft on the theory that the separate transactions were "part of a common scheme or plan". RCW 9A.56.010(12)(c). Individually, each transaction amounted to only a gross misdemeanor. RCW 9A.56.050(2).

---

[1]Fain was charged under RCW 9.54.090(5) (Laws of 1955, ch. 97, § 1, p. 497), which was repealed in 1975. Under the present law Fain's crime would be punishable as a gross misdemeanor. RCW 9A.56.050(2).

The State then filed a supplemental amended information accusing Fain of being a habitual criminal, alleging his recent conviction and the two prior convictions for grand larceny and forgery.[2] Prior to hearing on the matter, Fain moved to dismiss the supplemental information partially on the ground that the life sentence imposed by application of the habitual offender statute would constitute cruel and unusual punishment under the facts of his case. The court denied the motion, while granting the State's motion in limine to prohibit Fain from advising the jury of the fact that a person found to be a habitual criminal receives a life sentence. The special sentencing jury found Fain to be a habitual criminal, and the court accordingly imposed a life sentence.

## II

At the outset, we wish to emphasize that Fain does not challenge the constitutionality of the habitual criminal statute on its face. Indeed, such a challenge would fail, as we have long deferred to the legislative judgment that repeat offenders may face an enhanced penalty because of

---

[2]We note that Division Two of the Court of Appeals has recently held that the State may not aggregate a series of worthless checks under the "common scheme or plan" language of RCW 9A.56.010(12)(c), when the checks were written to "different people, in different places, over a period of days . . ." *State v. Meyer*, 26 Wn. App. 119, 124, 613 P.2d 132 (1980). Applied to Fain's third offense, the reasoning in *Meyer* means that the State could not charge him with second degree theft, but only with third degree theft, a gross misdemeanor. Even assuming the Court of Appeals is correct, a question we do not decide, our disposition in this case is not affected, as the State could have brought the habitual criminal charge against Fain upon conviction of "petit larceny" (former RCW 9.54.090, now third degree theft, RCW 9A.56.050(1)). In that event, Fain could make the same challenge he raises here.

The habitual criminal statute, RCW 9.92.090, provides, in pertinent part:

Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life.

their recidivism. *State v. Lee*, 87 Wn.2d 932, 937, 558 P.2d 236 (1976); *State v. Le Pitre*, 54 Wash. 166, 168, 103 P. 27 (1909); *State v. Williams*, 9 Wn. App. 622, 626, 513 P.2d 854 (1973). Nor does Fain challenge the State's authority to punish each of the offenses which underlie his designation as a habitual criminal. His claim goes instead squarely to the disproportionality between the nature of his crimes and the life sentence imposed as punishment for the three offenses which deprived the victims of less than $470 over a period of 17 years.[3]

### III

We agree with the State that Fain's Eighth Amendment claim is barred by the decision in *Rummel v. Estelle*, 587 F.2d 651 (5th Cir. 1978) (*Rummel I*), *aff'd*, 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980) (*Rummel II*). In that case, the United States Supreme Court rejected an Eighth Amendment challenge to a mandatory life sentence imposed under the habitual offender law of Texas, Tex.

---

[3]At the time Fain was charged with grand larceny in 1960, he could have been sentenced to a maximum term of 15 years in the state penitentiary. Laws of 1955, ch. 97, § 1, p. 497. (The current penalty for writing a $30 bad check is 1 year in the county jail. RCW 9A.56.050; RCW 9A.20.020(2)). At the time he committed forgery in California in 1965, the maximum penalty was 14 years in the state prison with a minimum of 1 year in the county jail. 1935 Cal. Stats., ch. 578, § 1, p. 1672. (The current penalty for forgery in California is a maximum of 1 year in the state prison. Cal. Penal Code § 473 (West)). The penalty for Fain's 1977 conviction, theft in the second degree, is a maximum of 5 years in the state penitentiary. RCW 9A.56.040(2); RCW 9A.20.020(1)(c).

Thus, if the trial judges in all three cases had exercised the maximum discretion granted them, Fain could have received, for his three offenses, 34 years in prison. The record reveals, of course, that the sentences actually imposed were much shorter. By contrast, if we accept the State's argument in the present case, the trial court *must* impose the maximum life sentence under RCW 9.92.090 if the jury returns an affirmative finding of habitual criminal status.

It is noteworthy that the actual sentences imposed by the trial judges acting in their discretion in the two prior cases more nearly accord with the current penalties. If the modern legislative judgment as to penalties is applied, Fain could have received a maximum of 1 year in the county jail for his 1960 conviction (RCW 9A.56.050(2); RCW 9A.20.020(2)); 1 year in prison for his 1965 conviction (Cal. Penal Code § 473 (West)); and 5 years in the penitentiary for his 1977 conviction (RCW 9A.56.010(12)(c); RCW 9A.20.020(1)(c): a total of 6 years in prison and 1 year in the county jail.

Penal Code Ann. art. 63 (Vernon 1925) (recodified in 1974 with minor revisions as Tex. Penal Code Ann. tit. 3, § 12.42(d) (Vernon)).

The three offenses underlying Rummel's designation as a habitual offender were the following: (1) obtaining $80 worth of goods or services by fraudulent use of a credit card (1964); (2) passing a forged check in the amount of $28.36 (1969); and (3) obtaining $120.75 by false pretenses (1973). *Rummel* II, at 265–66. Although the victims were deprived of a total of less than $230 by reason of Rummel's wrongful conduct, he was nonetheless found to be a habitual offender and sentenced to a mandatory life sentence in the state penitentiary. In declining to find the sentence cruel and unusual under the Eighth Amendment, the Supreme Court apparently rested its decision on its concern for upholding principles of federalism and on the difficulty of articulating objective standards for distinguishing in a particular non-capital case which punishments are cruel and unusual and which are not. *Rummel* II, at 274–75, 281, 284.

We need not undertake the difficult task of attempting to distinguish Rummel's offenses from those committed by Fain, for indeed the circumstances of the two cases are nearly indistinguishable for the purpose of resolving the question before us. Rather, we reiterate that Fain has rested his claim for relief not only on the Eighth Amendment, but also on our state constitution, Const. art. 1, § 14, which provides:

> Excessive bail shall not be required, excessive fines imposed, nor cruel punishment inflicted.

As we have stated in previous decisions, we may interpret the Washington Constitution as more protective than its federal counterpart. *Federated Publications, Inc. v. Kurtz,* 94 Wn.2d 51, 615 P.2d 440 (1980); *Northend Cinema, Inc. v. Seattle,* 90 Wn.2d 709, 714, 585 P.2d 1153 (1978); *Darrin v. Gould,* 85 Wn.2d 859, 868, 540 P.2d 882 (1975). *Accord, Oregon v. Hass,* 420 U.S. 714, 719, 43 L. Ed. 2d 570, 95 S. Ct. 1215 (1975). *See generally* Brennan, *State*

*Constitutions and the Protection of Individual Rights,* 90 Harv. L. Rev. 489 (1977).

Especially where the language of our constitution is different from the analogous federal provision, we are not bound to assume the framers intended an identical interpretation. The historical evidence reveals that the framers of Const. art. 1, § 14 were of the view that the word "cruel" sufficiently expressed their intent, and refused to adopt an amendment inserting the word "unusual". *The Journal of the Washington State Constitutional Convention: 1889,* at 501–02 (B. Rosenow ed. 1962). Accordingly, the task before us is to decide whether Fain's sentence is "cruel" within the meaning of the Washington Constitution. We observe that this approach frees us from at least one of the obstacles articulated by the majority in *Rummel* II: fear of the abuse of principles of federalism. *Rummel* II, at 284–85.

## IV

Before we embark on our inquiry, one threshold matter remains. The State urges that we evaluate Fain's sentence not as a mandatory life sentence in prison, but rather as a likelihood that the time actually served will be substantially less because of the availability of parole and "good behavior" credits. RCW 9.95.110; RCW 9.95.070.

Under Washington's present statutory scheme, the Board of Prison Terms and Paroles cannot establish a habitual offender's minimum sentence at less than 15 years and may fix it at life. RCW 9.95.040(3). The prisoner is entitled to earn credits for good behavior and diligence in work, RCW 9.95.070, but no one may be credited with more than one-third of his sentence as fixed by the board. RCW 9.95.110. Fain could accordingly be eligible for supervised parole in 10 years if his minimum sentence is fixed at 15 years and if he earned the maximum allowable good behavior credits. RCW 9.95.110. Moreover, the parole board has the authority to grant parole before the expiration of the mandatory minimum sentence where two-thirds (5 out of 7) of the members of the board concur. RCW 9.95.040.

The Supreme Court in *Rummel* II agreed with Rummel that it could not treat his life sentence "as if it were equivalent to a sentence of 12 years", although a prisoner serving a life sentence in Texas may theoretically become eligible for parole by then. Nonetheless, the court went on, "a proper assessment of Texas' treatment of Rummel could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life." *Rummel* II, at 280–81. The court did not, however, actually decide whether the possibility of parole affected its determination of Rummel's Eighth Amendment claim; in fact, it declined to undertake the inquiry, deferring to Texas' legislative judgment and noting the "complexities confronting any court" that attempts to compare the Texas recidivist scheme with the analogous statutes in other states. *Rummel* II, at 281.

██ It is clear to us that "parole is simply an act of executive grace." *Rummel* II, at 293 (Powell, J., dissenting). A prisoner has no right to parole, which is merely a privilege granted by the administrative body. *January v. Porter,* 75 Wn.2d 768, 774, 453 P.2d 876 (1969) (parole decision not subject to judicial review); *Lindsey v. Superior Court,* 33 Wn.2d 94, 104–05, 204 P.2d 482 (1949); *In re Lalande,* 21 Wn. App. 378, 380, 585 P.2d 180 (1978). The Supreme Court has also recognized this principle. *Greenholtz v. Inmates,* 442 U.S. 1, 7, 60 L. Ed. 2d 668, 99 S. Ct. 2100 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Morrissey v. Brewer,* 408 U.S. 471, 482 n.8, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972) (an individual's mere anticipation or hope of freedom is not as important as his justifiable reliance in maintaining his conditional release on parole). *And see Rummel* I (*Rummel v. Estelle,* 587 F.2d 651 (5th Cir. 1978)), at 665 *et seq.* (Clark, J., dissenting), *aff'd, Rummel* II (*Rummel v. Estelle,* 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980)).

In Washington, a prisoner is subject at any time to an investigation that may cause the parole board to refix his minimum sentence. The board is vested with authority to

increase Fain's minimum term of confinement up to the maximum of life imprisonment. RCW 9.95.052. Moreover, our statutes make it plain that one in Fain's position feels the consequences of his sentence even if he is so fortunate as to receive parole. RCW 9.95.040(3) requires that the parole board must retain jurisdiction over a habitual criminal "throughout his natural life", unless another act of executive grace, an order of the Governor, intervenes. *State v. Ogle,* 3 Wn. App. 549, 550–51, 475 P.2d 913 (1970). Parolees are typically subject to a wide range of restrictions and disabilities. *Morrissey,* at 478. Infractions of parole conditions, although not amounting to criminal acts, may result, in the parole board's discretion, in revocation and reconfinement in the institution. RCW 72.04A.080, .090; RCW 9.95.120, .125.

Finally, our cases and the foregoing statutory scheme reveal that Fain's chances of receiving parole have little to do with the crimes for which he was sentenced. Rather, his chances depend on his subsequent behavior in prison. Many forms of behavior, not criminal in the world outside the prison walls, may be grounds on which the parole board refuses to grant parole. A prisoner has no grounds to complain "if the parole board in its virtually unfettered discretion is never moved to release him or tell him why it did not." (Footnote omitted.) *Rummel* I, at 669 (Clark, J., dissenting), *aff'd, Rummel* II. *See also In re Lynch,* 8 Cal. 3d 410, 419, 503 P.2d 921, 105 Cal. Rptr. 217 (1972).

Under these circumstances, and because Fain's chances for executive grace are not legally enforceable, we feel compelled to view Fain's sentence according to its literal meaning: a life sentence. It remains only for us to determine whether a life sentence is unconstitutional when measured against Fain's crimes.

## V

■■ In addition to the traditional view that the Eighth Amendment proscribes certain modes of punishment, courts have by now concluded, most notably in the death

penalty cases before the United States Supreme Court, that a punishment clearly permissible for some crimes may be unconstitutionally disproportionate for others. *See, e.g., Coker v. Georgia,* 433 U.S. 584, 591-92, 53 L. Ed. 2d 982, 97 S. Ct. 2861 (1977). In recent years, the proportionality doctrine has been expanded in noncapital cases to help courts decide whether sentences of ordinary imprisonment are commensurate with the crimes for which such sentences are imposed. *Carmona v. Ward,* 576 F.2d 405 (2d Cir. 1978), *cert. denied,* 439 U.S. 1091, 59 L. Ed. 2d 58, 99 S. Ct. 874 (1979); *Downey v. Perini,* 518 F.2d 1288 (6th Cir.), *vacated and remanded,* 423 U.S. 993, 46 L. Ed. 2d 367, 96 S. Ct. 419 (1975); *Hart v. Coiner,* 483 F.2d 136 (4th Cir. 1973), *cert. denied,* 415 U.S. 938, 39 L. Ed. 2d 495, 94 S. Ct. 1454 (1974). *See also* Clapp, *Eighth Amendment Proportionality,* 7 Am. J. Crim. L. 253 (1979); Note, *Disproportionality in Sentences of Imprisonment,* 79 Colum. L. Rev. 1119, 1161-67 (1979); Note, *Recidivist Laws Under the Eighth Amendment—Rummel v. Estelle,* 10 Tol. L. Rev. 606 (1979). While not expressly adopted by the judiciary in Washington, the principle is implied in some of our cases. *State v. Lee,* 87 Wn.2d 932, 937, 558 P.2d 236 (1976); *State v. Gibson,* 16 Wn. App. 119, 125-26, 553 P.2d 131 (1976); *State v. Thomas,* 16 Wn. App. 1, 17, 553 P.2d 1357 (1976). Moreover, the legislature has recognized the principle in its most recent version of the criminal code, RCW Title 9A:

> (1) The general purposes of the provisions governing the definition of offenses are:
>
> . . .
>
> (d) To differentiate on reasonable grounds between serious and minor offenses, and to prescribe proportionate penalties for each.

RCW 9A.04.020(1)(d).

As the State points out, the application of proportionality standards to a specific set of facts is not an easy undertaking. Proportionality is an illusive concept which has developed gradually in response to society's changes. As the United States Supreme Court has said in reference to the

Eighth Amendment, its scope is not static; rather, it "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles,* 356 U.S. 86, 101, 2 L. Ed. 2d 630, 78 S. Ct. 590 (1958).

In attempting to employ proportionality analysis, courts have sought to use objective standards to minimize the possibility that the merely personal preferences of judges will decide the outcome of each case. *Coker,* at 592; *Gregg v. Georgia,* 428 U.S. 153, 173, 176, 49 L. Ed. 2d 859, 96 S. Ct. 2909 (1976); *Trop,* at 103; *Hart v. Coiner, supra. See also Weems v. United States,* 217 U.S. 349, 380–81, 54 L. Ed. 793, 30 S. Ct. 544 (1910).

We have previously indicated that the standards enunciated in *Hart* may be useful in analyzing a claim of cruel punishment. *Lee,* at 937 n.4; *accord, Gibson,* at 125–26. In *Hart,* the court considered four factors to determine whether a life sentence was disproportionate to the underlying offenses in a habitual criminal case. The factors were: (1) the nature of the offense; (2) the legislative purpose behind the habitual criminal statute; (3) the punishment defendant would have received in other jurisdictions for the same offense; and (4) the punishment meted out for other offenses in the same jurisdiction. *Hart,* at 140–43; *Gibson,* at 125–26. Subjected to that analysis, the court found the sentence of life imprisonment "wholly disproportionate to the nature of the offenses he committed, . . ." *Hart,* at 143.[4]

## A
### NATURE OF THE OFFENSE

Applying these standards to Fain's case, it is apparent that each of the crimes that underlies his conviction as a habitual offender involved the use of fraud to obtain small sums of money ranging from $2.10 to $40, adding up to a

---

[4]The three offenses underlying Hart's conviction as a habitual criminal were: (1) writing a check for $50 on insufficient funds (1949); (2) interstate transportation of forged checks worth $140 (1955); and (3) perjury (1968). *Hart,* at 138.

total of less than $470. Mr. Justice Powell's characterization of Rummel's three crimes applies with equal force to Fain:

> None of the crimes involved injury to one's person, threat of injury to one's person, violence, the threat of violence, or the use of a weapon. Nor does the commission of any such crimes ordinarily involve a threat of violent action against another person or his property. It is difficult to imagine felonies that pose less danger to the peace and good order of a civilized society than the three crimes committed by the petitioner. Indeed, the state legislature's recodification of its criminal law supports this conclusion. Since the petitioner was convicted as an habitual offender, the State has reclassified his third offense, theft by false pretext, as a misdemeanor. Texas Penal Code Ann. § 31.03(d)(3) (Supp. 1980).

(Footnote omitted.) *Rummel* II, (*Rummel v. Estelle,* 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980)), at 295 (Powell, J., dissenting).[5]

The State suggests this factor is of little utility because it is too difficult for courts to distinguish between violent crimes and nonviolent crimes against property. *See, e.g., State v. Pettitt,* 22 Wn. App. 689, 591 P.2d 862 (1979), *aff'd in part, rev'd in part on other grounds,* 93 Wn.2d 288, 609 P.2d 1364 (1980). We agree that there may be cases where the distinction is troublesome to draw in a principled manner, but potential difficulties in other cases are not before us. Surely it takes no special judicial competence to conclude that none of Fain's crimes even threaten violence to persons or property. In fact, it can be inferred that the people of Washington through their legislature may share our view that Fain's crimes were relatively minor.[6]

---

[5]The Washington legislature has likewise recodified Fain's first offense into a gross misdemeanor. (See footnote 1.)

[6]See footnotes 1 and 3. Our research also reveals that the penalty for forgery in Washington in 1965 (when Fain was convicted of that offense in California) was a maximum of 20 years. Laws of 1909, ch. 249, § 331, p. 990, repealed by Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92.010(113), p. 862. Since 1976, the punishment for forgery in Washington has been a maximum of 5 years in a correctional institution. RCW 9A.60.020(2); RCW 9A.20.020(1)(c).

## B
### PUNISHMENT IN OTHER JURISDICTIONS FOR THE SAME OFFENSE

Apparently Washington is one of only three states which still retains a habitual criminal statute imposing a mandatory life sentence after any three felonies. *Rummel* II, at 279; at 296 (Powell, J., dissenting); L. Sleffel, *The Law and the Dangerous Criminal: Statutory Attempts at Definition and Control,* at 12–13, 17 (1977). The State of Idaho, for example, requires that "persistent violator[s]" convicted of three felonies shall be sentenced to "not less than five (5) years and said term *may* extend to life." (Italics ours.) Idaho Code § 19–2514.

Oregon has repealed its habitual criminal statute (1961 Ore. Laws, ch. 648, §§ 1–14, p. 1303–07, repealed by 1971 Ore. Laws, ch. 743, § 432, p. 2002–03), and replaced it with a system for enhanced sentencing of dangerous offenders. Ore. Rev. Stat. §§ 161.725 and 161.735. California's current sentence enhancement statute imposes a maximum of 3 years' additional sentence for a prior violent felony conviction for which a defendant served a prison term. Cal. Penal Code § 667.5(a) (West). For crimes not defined as "violent felonies" under section 667.5(c), the maximum enhancement is a 1–year additional term "for each prior separate prison term served for any felony; . . ." Cal. Penal Code § 667.5(b) (West). *Cf.* Ky. Rev. Stat. Ann. § 532.080 (Baldwin), and comment thereto:

> [One approach would be that a persistent offender be sentenced to life imprisonment.] This approach was rejected because of a judgment that under some circumstances life imprisonment for an habitual criminal is not justified. An example would be an offender who has committed three Class D felonies, none involving injury to person.

Finally, 18 U.S.C. § 3575 (1976), the federal "dangerous special offender" statute, authorizes a finding of such status if (1) the defendant has committed two or more previous felonies, one of them within the last 5 years, (2) the current

felony arose from a pattern of conduct "which constituted a substantial source of his income, and in which he manifested special skill or expertise", or (3) the felony involved a criminal conspiracy in which the defendant played a supervisory role. 18 U.S.C. § 3575(e)(2) (1976). Federal courts may sentence such persons "to imprisonment for an appropriate term not to exceed twenty–five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony." 18 U.S.C. § 3575(b) (1976).

Under the Idaho statute, Fain could be sentenced to as little as 5 years in a correctional institution. Idaho Code § 19–2514. In Oregon, Fain's conviction for second degree theft could not be enhanced at all, because he could not be defined as a dangerous offender. Ore. Rev. Stat., §§ 161.725 and 161.735. In California, Fain's sentence could be enhanced by a maximum of 1 year for each prior conviction, a total of 2 years. Cal. Penal Code § 667.5 (West) (as amended, 1977 Cal. Stat., ch. 2, § 1, p. 4–6 and ch. 165, § 13, p. 644–46). Kentucky could sentence Fain to an indeterminate term of not more than 20 years (Ky. Rev. Stat. § 532.080(4)(c)), assuming his last conviction was a class D felony. In Kentucky, Fain's third conviction would be theft by deception, a misdemeanor unless the value of the property obtained exceeds $100. Ky. Rev. Stat. § 514.040(1)(e) and (5). Moreover, Fain's offenses do not meet the requirements of 18 U.S.C. § 3575 (1976), which, we note, incorporates the proportionality principle into the statute itself. Nor do we find other jurisdictions besides Texas and West Virginia that would sentence Fain to a mandatory life term for the three offenses for which he was convicted. *See* L. Sleffel, at 3–15. By any standard, Fain's sentence is much harsher than he would face in virtually all American jurisdictions. While not in itself determinative, this conclusion is one factor we must consider in our analysis of Fain's claim.

## C
### PUNISHMENT IN WASHINGTON FOR
### OTHER OFFENSES

Washington requires a mandatory life sentence for only one crime, murder in the first degree, RCW 9A.32.040(3), .047. The class A felonies carry a term of not less than 20 years in a state correctional institution with a possibility of a life sentence, in the court's discretion. RCW 9.95.010. Class A felonies include: murder in the second degree (RCW 9A.32.050(2)); assault in the first degree (RCW 9A.36.010(2)); kidnapping in the first degree (RCW 9A.40-.020(2)); rape in the first degree (RCW 9A.44.040(2)); statutory rape in the first degree (RCW 9A.44.070(2)); arson in the first degree (RCW 9A.48.020(2)); burglary in the first degree (RCW 9A.52.020(2)); and robbery in the first degree (RCW 9A.56.200(2)). Even a person previously convicted of a felony who upon conviction of a second offense is found to have been armed with a deadly weapon is subject to a mandatory minimum term of only 7 1/2 years. RCW 9.95-.040(2).

In combination, the deceitful acts for which petitioner was found to be a habitual offender deprived his victims of a total of less than $470. By comparison, at present, the crime of first degree theft (property or services with a value in excess of $1,500) is a class B felony with a maximum punishment of 10 years. RCW 9A.56.030(1)(a); RCW 9A.20.020(1)(b). Moreover, a second conviction of first degree theft or any class B or class C felony could result in a penalty of only 10 years. RCW 9.92.090. These comparisons make it abundantly clear that Fain's offenses, if not indeed trivial when compared to his punishment, have earned him a penalty much in excess of that imposed for those crimes which society ordinarily regards as far more serious threats to life, health, and property.[7]

---

[7]In its proportionality analysis, the court in *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. denied*, 415 U.S. 938, 39 L. Ed. 2d 495, 94 S. Ct. 1454 (1974), considered a fourth factor, the relationship between the punishment imposed and

## VI

We hasten to repeat that we must and do defer to the legislative decision to impose an enhanced penalty on recidivists. *State v. Lee*, 87 Wn.2d 932, 558 P.2d 236 (1976). Yet, legislative authority is ultimately circumscribed by the constitutional mandate forbidding cruel punishment. Our duty to determine whether a legislatively imposed penalty is constitutionally excessive is not one which we assume eagerly, but we do not shrink from our responsibility.

In this case, the accused committed three wholly nonviolent crimes involving small amounts of property; indeed, two of the three would likely be charged as gross misdemeanors at the present time. RCW 9A.56.050(2); RCW 9A.56.010(12)(c). As a result, he was sentenced to life in prison, a penalty required at most by only two other American jurisdictions for three such "felonies". *Rummel* II, at 279. Fain's sentence greatly exceeds the penalties which the criminal code imposes for all felonies except murder in the first degree. His three fraudulent acts cause him to face a punishment which the legislature declines to impose on those who commit murder in the second degree, arson, rape, robbery, assault, and other dangerous felonies.

Under these circumstances, we believe Fain's sentence to be entirely disproportionate to the seriousness of his crimes. Accordingly, we hold it is cruel punishment in violation of Const. art. 1, § 14. Since the applicable portion of the habitual criminal statute provides for nothing less than a life sentence, that portion of the judgment and sentence must be vacated.

---

the legislative objective in making the conduct a punishable offense. *Hart,* at 141. If the purposes of the statute can be equally well served by a less severe punishment, the court believed that factor should be considered.

In our view, this standard should be employed with caution. Legislative judgments as to punishments for criminal offenses are entitled to the greatest possible deference, and we are reluctant to venture a conclusion, given the inexactitude of current theories of penology, that a given sentence more nearly accomplishes the legislative purpose. In any event, the other three factors, applied to the circumstances of this case, are sufficient standards to support our conclusion.

The decision of the Court of Appeals is reversed, and the matter is remanded to Kitsap County Superior Court for resentencing in accordance with this opinion.

UTTER, C.J., and HOROWITZ, DOLLIVER, and HICKS, JJ., concur.

ROSELLINI, J. (dissenting)—The majority concedes that the petitioner's crimes qualify him for the status of habitual criminal under RCW 9.92.090. It also concedes that the United States Supreme Court, in affirming *Rummel v. Estelle,* 587 F.2d 651 (5th Cir. 1978), has held that a life sentence for the type of recidivism exhibited here does not violate the eighth amendment to the United States Constitution, in other words, does not constitute cruel and unusual punishment. *Rummel v. Estelle,* 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980). The wording of the Eighth Amendment is substantially the same as that of Const. art. 1, § 14. Nevertheless, it does not hesitate to find in the same words a meaning quite different from that which the highest court of the land has found. It has done this with no valid justification, in my opinion.

It is the general rule that language in our state constitution will be given the same interpretation as that given the federal constitutional provision by the United States Supreme Court. *Northend Cinema, Inc. v. Seattle,* 90 Wn.2d 709, 585 P.2d 1153 (1978); *Housing Auth. v. Saylors,* 87 Wn.2d 732, 557 P.2d 321 (1976). In the latter case, we indicated that there is room for a different construction only where the language of the provision differs. However, we have since departed from that doctrine to the extent that we may reject the reasoning of the United States Supreme Court if we do not find it persuasive.

What was that reasoning in *Rummel*? First, the Supreme Court majority opinion recalled the court's prior statements to the effect that the Eighth Amendment prohibits the imposition of a sentence which is grossly disproportionate to the severity of the crime, noting that the proposition had

appeared most frequently in recent years in opinions dealing with the death penalty, a penalty which differs in kind from all others, because of its obvious finality, its rejection of rehabilitation as an objective of criminal justice, and its renunciation of "all that is embodied in our concept of humanity." The court then noted the rarity of successful challenges to the proportionality of particular sentences, outside the context of capital punishment, finding only one case, that of *Weems v. United States,* 217 U.S. 349, 54 L. Ed. 793, 30 S. Ct. 544 (1910), in which it has held a punishment short of death to be violative of the Eighth Amendment.

The Supreme Court then pointed out that in *Weems,* the 12-year penalty for falsifying a single record, whether or not anyone was injured as a result, was not the controlling factor. Rather the other incidents of punishment imposed, called "accessories, or accompaniments",[8] constituted the evil which persuaded the court to find the punishment cruel and unusual. Absent some such punishment, which is of a different nature than the imprisonment customarily imposed, and without some objective criteria by which to measure proportionality of a sentence, the court is apt to find itself in the position of substituting the views of justices for those of legislators, the court said.

The court in *Rummel* was confronted with the same propositions which have won the approval of the majority, and wisely rejected them. It was there argued that Rummel's crimes had involved the theft of only small sums of money, and that much more serious crimes were punishable by milder sentences than life. But the court quite properly

---

[8]"The punishment of *cadena temporal* is from twelve years and one day to twenty years (arts. 28 and 96), which 'shall be served' in certain 'penal institutions.' And it is provided that 'those sentenced to *cadena temporal* and *cadena perpetua* shall labor for the benefit of the state. They shall always carry a chain at the ankle, hanging from the wrists; they shall be employed at hard and painful labor, and shall receive no assistance whatsoever from without the institution.' Arts. 105, 106. There are besides certain accessory penalties imposed, which are defined to be (1) civil interdiction; (2) perpetual absolute disqualification; (3) subjection to surveillance during life." *Weems,* at 364.

pointed out that Rummel was attempting to equate his series of crimes with a single offense of another. The court said:

> In this case, however, we need not decide whether Texas could impose a life sentence upon Rummel merely for obtaining $120.75 by false pretenses. Had Rummel only committed that crime, under the law enacted by the Texas Legislature he could have been imprisoned for no more than 10 years. In fact, at the time that he obtained the $120.75 by false pretenses, he already had committed and had been imprisoned for two other felonies, crimes that Texas and other States felt were serious enough to warrant significant terms of imprisonment even in the absence of prior offenses. Thus the interest of the State of Texas here is not simply that of making criminal the unlawful acquisition of another person's property; it is in addition the interest, expressed in all recidivist statutes, in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law. By conceding the validity of recidivist statutes generally, Rummel himself concedes that the State of Texas, or any other State, has a valid interest in so dealing with that class of persons.

*Rummel,* at 276.

Rummel also attempted to convince the court that there was a significant trend toward lighter sentences in other states, but the court observed that the charts which he offered the court required complex comparisons which the court did not find it necessary to embark upon, for the sound reason that the constitution does not require uniformity in the criminal laws among the several states.

The court also noted that penologists are not in agreement as to whether sentences should be light or heavy, discretionary or determinative, and that this fact makes it all the more imperative that decisions with respect to the appropriate punishment should be left to the legislature.

The purpose of a recidivist statute, the majority opinion said, is not to simplify the task of prosecutors, judges or juries, but to deter repeat offenders, and at some point in

such an offender's career, to separate him from society for an extended period of time. This segregation is based not merely on the latest offense, but on the propensities the individual has shown over a period of time.

The court's conclusion was that it was the proper province of the legislature to determine the point at which recidivism is established and the appropriate amount of time the recidivist will be separated from society.

If one doubts that recidivists are professional criminals, dedicated to that way of life, he should examine the results of a study made by Frank Smalleger, about which he writes in the magazine *Human Nature* (March 1979), in an article entitled "World of the Career Criminal." According to his studies, there is a vast difference between the one–time offender (usually a naive person, often one who commits a "crime of passion") and the repeater. The latter pursues crime as a way of life, with its own incentives, techniques, skills, and rewards. He views the period of imprisonment as merely an aspect, and not an altogether unpleasant one, of his career. Until we find a method of converting such persons from commitment to the criminal life to dedication to a life which conforms to society's standards, it does not appear at all unreasonable that the legislature should see fit to isolate them for extended periods.

The majority opinion refuses to attach significance to the fact that in reality a life sentence is rarely if ever a sentence for life, and that it can last for little more than a dozen years. The Supreme Court majority in *Rummel,* on the other hand, recognized that the possibility of parole is a factor that cannot rightly be disregarded. This court has agreed in *State v. Smith,* 93 Wn.2d 329, 610 P.2d 869 (1980) and *State v. Fairbanks,* 25 Wn.2d 686, 171 P.2d 845 (1946), both of which the majority has seen fit to ignore.

In the latter case, we said that a claim of cruel and unusual punishment cannot be considered until after the minimum sentence has been set. And in *Smith,* we viewed the punishment in the light of the actual sentence imposed,

which was a deferred sentence of 5 years. It was there contended that to make the possession of a specified quantity of marijuana felonious constituted cruel and unusual punishment. We there found the punishment prescribed to be in harmony with present societal values, and not in conflict with historical attitudes.

Only if the punishment were grossly disproportionate to the offense would the court be justified in invalidating it as cruel and unusual, the majority of this court said in *Smith*. And punishment is grossly disproportionate only if the conduct should never be proscribed or if the punishment is clearly arbitrary and shocking to the sense of justice.

To my mind, the reasoning of the Supreme Court in *Rummel* is valid and should be adopted by this court in construing our own constitutional provision, the essence of which does not differ from that of the federal constitution. The majority approach does not accord to the people, acting through their legislature, the deference that is due their judgment upon this matter, which is at the very least one upon which reasonable minds may differ. Thus the majority substitutes its judgment for that of the legislature, and casts that judgment in constitutional cement.

I would affirm the Court of Appeals and hold the statute constitutional as applied in this instance.

STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur with ROSELLINI, J.

Reconsideration denied November 17, 1980.