STEPHENS, J. (dissenting)
¶ 45 The majority's decision to invalidate a provision of our Miller - fix statute, RCW 10.95.030(3)(a)(ii), and to categorically bar the imposition of a juvenile life without parole (LWOP) sentence purports to rest on article I, section 14 of the Washington State Constitution. However, it offers no basis in state law but is simply a reinterpretation of Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). More precisely, the majority takes Miller' s federal constitutional requirement-that a sentencing court consider youth and its attendant characteristics as mitigating factors in exercising sentencing discretion to impose LWOP-and uses it to categorically bar the exercise of such discretion under the state constitution. Not only is this contrary to the holding in Miller itself, which does not categorically bar LWOP sentences for juvenile homicide offenders, it also departs from state precedent rejecting similar constitutional challenges and upholding judicial sentencing discretion.
¶ 46 I respectfully dissent. I would hold that the provision of Washington's Miller - fix statute, RCW 10.95.030(3)(a)(ii),[1] complies with article I, section 14 and ensures that LWOP will rarely be imposed on juveniles who commit murder. That statute appropriately requires sentencing courts exercising discretion to "take into account mitigating factors that account for the diminished culpability of youth as provided in Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012)." RCW 10.95.030(3)(b). While Miller prohibits the imposition of LWOP on "juvenile offenders whose crimes reflect the transient immaturity of youth," Montgomery v. Louisiana, --- U.S. ----, 136 S.Ct. 718, 734, 193 L.Ed.2d 599 (2016), it does not categorically prohibit this sentence for all juvenile homicide offenders. In reviewing a juvenile LWOP sentence, the considerations required under RCW 10.95.030(3) modify our traditional state constitutional analysis under State v. Fain, 94 Wash.2d 387, 617 P.2d 720 (1980). Just as RCW 10.95.030(3)(a)(ii) complies with the Eighth Amendment under the reasoning in Miller, it complies with article I, section 14 of the Washington Constitution. I would reverse the Court of Appeals and uphold the sentencing judge's discretion to impose LWOP on Brian Bassett.
*356 I. The Proportionality Test from State v. Fain, as Modified by RCW 10.95.030(3), Governs Review of Sentences under Article I, Section 14 of the Washington Constitution
¶ 47 Washington State has long used the proportionality principles adopted in Fain to determine whether punishment is constitutional under article I, section 14 of the Washington Constitution. See State v. Witherspoon, 180 Wash.2d 875, 895, 329 P.3d 888 (2014) (Gordon McCloud, J., concurring and dissenting) ("The controlling Washington case interpreting the applicable provision of the Washington State Constitution is State v. Fain. Fain requires us to do just such a disproportionality analysis now, in reviewing the sentence." (citation omitted) ); see also State v. Ramos, 187 Wash.2d 420, 454 & n.10, 387 P.3d 650 (2017) (refusing to consider state constitutional argument in part because defendant failed to "address the factors for determining whether a sentence independently violates the Washington Constitution" (citing Fain, 94 Wash.2d at 397, 617 P.2d 720 ) ). The Fain proportionality factors include "(1) the nature of the offense; (2) the legislative purpose behind the [relevant] statute; (3) the punishment defendant would have received in other jurisdictions for the same offense; and (4) the punishment meted out for other offenses in the same jurisdiction." 94 Wash.2d at 397, 617 P.2d 720.
¶ 48 The majority casts aside the Fain analysis on the ground that it "does not include significant consideration of the characteristics of the offender class," and is thus "ill suited" to address claims based on "the nature of children." Majority at 351. This fails to appreciate the breadth of the inquiry under Fain, which fully incorporates consideration of the unique characteristics of youth under Washington's Miller - fix statute, RCW 10.95.030(3).
¶ 49 Following the United States Supreme Court decision in Miller, the legislature directed that Washington sentencing courts must consider "mitigating factors that account for the diminished culpability of youth ... including, but not limited to, the age of the individual, the youth's childhood and life experience, the degree of responsibility the youth was capable of exercising, and the youth's chances of becoming rehabilitated." RCW 10.95.030(3)(b). The Washington Miller - fix statute addresses the foundational principle from Miller and the previous cases it built on-"that imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." 567 U.S. at 474, 132 S.Ct. 2455.
¶ 50 Post- Miller , our constitutional analysis under Fain necessarily incorporates these considerations. The majority repeats the error of the Court of Appeals by divorcing the Fain analysis from Miller 's requirements, when we must respect both. Majority at 351 (stating, "a test that does not consider youthful characteristics should not be adopted"); State v. Bassett, 198 Wash.App. 714, 738, 394 P.3d 430 (2017) (suggesting Fain conflicts with Miller by requiring courts "to focus exclusively on the nature of the crime and ignore the nature of the offender"). Although the majority complains that Fain fails to consider the nature of children, majority at 350-51, it ultimately acknowledges that applying Fain along with the Miller - fix statute actually does require consideration of the characteristics of youth. See Id. at 354 ("[W]hile aggravated murder warrants a serious punishment, youth convicted of the offense have the special protections from the Miller - fix statute requiring sentencing courts to consider children's diminished culpability."). Properly understood, our Fain analysis does not fail to account for youth and its attendant characteristics but, instead, folds these considerations into our constitutional review under article I, section 14.
II. Our Post-Miller State Constitutional Analysis under Fain Fully Accounts for Youth and Its Attendant Characteristics in Deciding Whether To Impose LWOP on a Juvenile Homicide Offender
¶ 51 Understanding that adequate sentencing review must account for both Miller and Fain, there is no basis to abandon our traditional state constitutional analysis. Both the substantive and procedural aspects of the holding in Miller may be harmonized with the Fain factors under our analysis. Nothing in Miller forecloses individual sentence review.
*357 Instead, " Miller drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption. The fact that life without parole could be a proportionate sentence for the latter kind of juvenile offender does not mean that all other children imprisoned under a disproportionate sentence have not suffered the deprivation of a substantive right." Montgomery, 136 S.Ct. at 734. The Court in Miller could have extended the categorical reasoning of its earlier juvenile sentencing decisions to entirely eliminate the discretion of a sentencing judge to consider LWOP for juvenile homicide offenders, but it did not. Miller examined Roper v. Simmons, 543 U.S. 551, 575, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) and Graham v. Florida, 560 U.S. 48, 82, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), in which the Court held, respectively, that the execution of individuals who were under 18 years of age at the time of their capital crimes is prohibited by the Eighth and Fourteenth Amendments, and that LWOP is an unconstitutional sentence for juveniles who commit crimes other than murder. In refusing to extend a categorical bar to juvenile LWOP sentences for homicide offenders, the Court in Miller upheld the discretion of sentencing judges, guided by consideration of the mitigating circumstances of youthfulness. See Miller, 567 U.S. at 483, 132 S.Ct. 2455 ("Our decision does not categorically bar a penalty for a class of offenders or type of crime-as, for example, we did in Roper or Graham. Instead, it mandates only that a sentencer follow a certain process-considering an offender's youth and attendant characteristics-before imposing a particular penalty."). Miller noted the distinction between a categorical ban on LWOP applied to nonhomicide crimes in Graham and allowance of this penalty in light of the additional moral culpability and consequential harm arising from murder. Miller, 567 U.S. at 473, 132 S.Ct. 2455 (citing Graham, 560 U.S. at 69, 130 S.Ct. 2011 ).
¶ 52 We recently recognized that " Miller 's procedural requirement for individualized sentencing of juvenile homicide offenders 'does not replace but rather gives effect to Miller' s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity.' " Ramos, 187 Wash.2d at 441, 387 P.3d 650 (quoting Montgomery, 136 S.Ct. at 735 ). Miller explicitly requires sentencing courts to
receive and consider relevant mitigation evidence bearing on the circumstances of the offense and the culpability of the offender, including ... the juvenile's "chronological age and its hallmark features-among them, immaturity, impetuosity, and failure to appreciate risks and consequences." It is also necessary to consider the juvenile's "family and home environment" and "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him." And where appropriate, the court should account for "incompetencies associated with youth" that may have had an impact on the proceedings, such as the juvenile's "inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys."
Ramos, 187 Wash.2d at 443-44, 387 P.3d 650 (citations omitted) (quoting Miller, 567 U.S. at 477-78, 132 S.Ct. 2455 ). "[E]vidence of actual ' "demonstrated maturity and rehabilitation" ' is generally considered later, when it is time to determine whether a former juvenile offender who is up for parole should be given early release." Id. at 449, 387 P.3d 650 (quoting Miller, 567 U.S. at 479, 132 S.Ct. 2455 (quoting Graham, 560 U.S. at 75, 130 S.Ct. 2011 ) ). "Whether such evidence should be considered at the time of resentencing to the extent that it bears on the offender's culpability is a question we leave to the discretion of the trial court in each case." Id. "[T]he Supreme Court has expressly acknowledged that ' Miller did not require trial courts to make a finding of fact regarding a child's incorrigibility.' " Id. at 449-50, 387 P.3d 650 (quoting Montgomery, 136 S.Ct. at 735 ).
¶ 53 The majority fails to explain why the line drawn in Miller and recognized by this court in Ramos is now constitutionally inadequate. It is not enough to say, as the majority does, that we have relied on Miller to *358 impose additional restraints on juvenile sentencing. See majority at 349-50. Our cases applying Miller all recognize that Miller allows sentencing judges the discretion to impose harsh sentences on juvenile offenders, including LWOP in rare circumstances. See State v. O'Dell, 183 Wash.2d 680, 698-99, 358 P.3d 359 (2015) ("We hold that a defendant's youthfulness can support an exceptional sentence below the standard range ... and that the sentencing court must exercise its discretion to decide when that is."); Ramos, 187 Wash.2d at 428, 387 P.3d 650 ("[W]here a convicted juvenile offender faces a possible life-without-parole sentence, the sentencing court must conduct an individualized hearing and 'take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.' " (quoting Miller, 567 U.S. at 480, 132 S.Ct. 2455 ) ); State v. Houston-Sconiers, 188 Wash.2d 1, 21, 391 P.3d 409 (2017) ("In accordance with Miller, we hold that sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system."). Legislative changes conforming judicial sentencing practices to Miller similarly recognize that judges have discretion to impose LWOP in uncommon cases of 16- and 17-year-olds who commit murder. RCW 10.95.030(3)(a)(ii). There is simply no foundation in Washington law post- Miller to support the majority's newfound interpretation of article I, section 14 to categorically prohibit juvenile LWOP sentences.
III. The Majority's Gunwall Analysis Ultimately Relies on Reinterpreting Miller and Offers No State Law Basis To Categorically Bar Juvenile LWOP for Homicide Offenses
¶ 54 The majority recognizes that a meaningful analysis under State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986), must focus on "specific applications" of article I, section 14, not general comparisons of state and federal constitutional provisions. See majority at 348-49; Ramos, 187 Wash.2d at 454, 387 P.3d 650 ("Even where it is already established that the Washington Constitution may provide enhanced protections on a general topic, parties are still required to explain why enhanced protections are appropriate in specific applications."). Nonetheless, as discussed above, the only authority the majority relies on specific to juvenile sentencing are our prior decisions applying Miller and related federal cases, and Washington juvenile sentencing statutes, including the Miller - fix statute. Majority at 349-50. That the majority walks through the six Gunwall factors[2] cannot obscure the fact that there is no independent source of state law categorically prohibiting LWOP in this context.
¶ 55 Prior to Miller, Washington precedent and statutes allowed for juvenile LWOP sentencing on a wider scale. The State correctly points out that "Washington courts have repeatedly rejected constitutional challenges to juvenile LWOP sentences." Revised Suppl. Br. of Pet'r at 10 (citing State v. Furman, 122 Wash.2d 440, 458, 858 P.2d 1092 (1993) ; State v. Massey, 60 Wash.App. 131, 145-46, 803 P.2d 340, review denied, 115 Wash.2d 1021, 802 P.2d 126 (1990), cert. denied, 499 U.S. 960, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991) ; State v. Stevenson, 55 Wash.App. 725, 737-38, 780 P.2d 873 (1989), review denied, 113 Wash.2d 1040, 785 P.2d 827 (1990) ; State v. Forrester, 21 Wash.App. 855, 870-71, 587 P.2d 179 (1978), review denied, 92 Wash.2d 1006, 1979 WL 71412 (1979) ). As the Court of Appeals acknowledged, even after Miller "no Washington case has applied the categorical bar analysis." Bassett, 198 Wash.App. at 733, 394 P.3d 430. To the contrary, our cases have consistently recognized the limited reach of the holding in Miller and that our Miller -fix statute complies with it. See Ramos 187 Wash.2d at 440-53, 387 P.3d 650. Nor has our *359 legislature taken the approach that some other states have taken post- Miller , of categorically eliminating LWOP as a permissible sentence for all juvenile offenders. Instead, RCW 10.95.030(3)(a) removes LWOP from consideration only for juveniles age 15 and under, and retains judicial discretion to impose LWOP on 16- and 17-year-old homicide defendants in rare circumstances. I thus fail to see how the majority finds evidence supporting a categorical bar in Washington law when these authorities all rely on or respond to Miller, which itself imposes no categorical constitutional bar to LWOP for juvenile homicide offenders.[3]
¶ 56 At the end of the day, the majority's circular path of reasoning leads back to Miller, and it attempts to reinterpret Miller in a way that expands the substantive holding in that case to make it more like Graham. The majority ultimately rejects Miller 's actual holding, requiring individualized review of youth and attendant characteristics for LWOP sentencing of juvenile homicide offenders, because it elevates Graham 's reasoning to an absolute. Majority at 350-51 (citing Graham, 560 U.S. at 67, 130 S.Ct. 2011 ). Graham appropriately recognized that children are different from adults and that juvenile LWOP sentences often fail to serve valid penological goals. See Graham, 560 U.S. at 61, 130 S.Ct. 2011. However, the Court in Graham made clear that this "categorical bar [to LWOP] relates only to nonhomicide offenses." Miller, 567 U.S. at 473, 132 S.Ct. 2455 (citing Graham, 560 U.S. at 69, 130 S.Ct. 2011 ). Here, of course, we are concerned with homicide crimes, specifically homicide crimes committed by juvenile offenders between the ages of 16 and 18. Notwithstanding Graham 's recognition of the mitigating impact of youth and its attendant characteristics, Miller determined it is sufficient that sentencers must consider individual differences among juvenile homicide defendants when imposing LWOP sentences. Id. at 480, 132 S.Ct. 2455. In Ramos, we recognized that Miller allows for sentencing discretion to impose LWOP on juvenile homicide offenders, consistent with the Eighth Amendment. We refused to entertain the very argument the majority today embraces in the absence of a state constitutional analysis under the Fain factors. 187 Wash.2d at 454-55, 387 P.3d 650.[4] The majority's answer to Ramos, apparently, is to now say a Fain analysis must give way to a categorical analysis. See majority at 350-51 (rejecting Fain analysis as insufficient to consider the characteristics of youth); see also Bassett, 198 Wash.App. at 738, 394 P.3d 430 (refusing to apply Fain ).
¶ 57 Although the majority walks through the Gunwall factors to find that article I, section 14 is more protective than the Eighth Amendment to the United States Constitution, majority at 349-50, its reasoning rests entirely on reinterpreting Miller to follow the categorical bar approach of Graham. The majority is careful not to expressly rely on the single Iowa case to take this approach, see State v. Sweet, 879 N.W.2d 811 (Iowa 2016), but it endorses the Court of Appeals' categorical bar analysis that leans heavily on Sweet . See majority at 350; Bassett, 198 Wash.App. at 735, 394 P.3d 430. The problem with this analysis is that it uses Graham 's general recognition that LWOP is often unconstitutional for children to overrule Miller 's specific holding that it is sometimes allowed. See Sweet, 879 N.W.2d at 829-30. Reaching such a result by invoking state law rather than resting on federal law provides thin cover.
¶ 58 Washington State law does not categorically bar LWOP for juvenile homicide offenders. We consistently upheld juvenile LWOP before Miller, and it remains a constitutionally *360 permissible sentence for some juveniles under Miller 's clear holding. Nothing in our subsequent precedent adhering to Miller supports using article I, section 14 to expand Miller 's holding. I would uphold the constitutionality of RCW 10.95.030(3)(a)(ii) and recognize the discretion of sentencing courts to impose LWOP on juvenile homicide offenders in rare cases such as this.
CONCLUSION
¶ 59 Bassett, pursuant to the Miller -fix statute, was resentenced in 2015 when he was 35 years old. Bassett , 198 Wash.App. at 718, 721, 394 P.3d 430. Consistent with RCW 10.95.030(3)(b), the resentencing court explicitly considered the required Miller factors, including the transient immaturity and impulsivity attendant to youth in general, as well as the evidence Bassett introduced regarding his disposition. The court ultimately accepted the original LWOP sentence, finding that Bassett's conduct in the premeditated murders did not indicate transient immaturity or impulsiveness. This sentence was within the court's discretion, though based on the record a different judge may have imposed a lesser sentence.[5]
¶ 60 I would conclude that RCW 10.95.030(3)(a)(ii) is constitutional and would therefore uphold the sentencing court's discretionary decision to impose LWOP on Bassett for the murders of his parents and brother.
Fairhurst, C.J.,
Johnson, J.
Madsen, J.

Although the Court of Appeals holds that "life sentences without parole or early release for juvenile offenders as allowed under RCW 10.95.030(3)(a)(ii) are unconstitutional," State v. Bassett, 198 Wash.App. 714, 743, 394 P.3d 430 (2017), at one point the court also reasons that "[b]ecause we agree that the Miller -fix statute violates the Washington State Constitution, we do not reach Bassett's alternative arguments that the statute is unconstitutional under the federal constitution's Eighth and Sixth Amendments." Id. at 722, 394 P.3d 430 ; U.S. Const. amends. VIII, VI. Based on the concise holding, I presume that the Court of Appeals never intended to invalidate the entire Miller - fix statute but, instead, only the provision that was before the court. See id. at 716, 394 P.3d 430 ("Bassett appeals his new sentence and successfully argues that a provision of the Miller - fix statute, RCW 10.95.030(3)(a)(ii), violates our State's constitutional prohibition against cruel punishment. ... We hold that under a categorical bar analysis, the statutory Miller -fix provision that allows 16- to 18-year-old offenders convicted of aggravated first degree murder to be sentenced to life without parole or early release violates article I, section 14 of the state constitution prohibiting cruel punishment." (footnote omitted) ).

The Gunwall analysis considers the following factors to determine whether the Washington Constitution provides greater protection than the United States Constitution: (1) "The textual language of the state constitution," (2) "Significant differences in the texts of parallel provisions of the federal and state constitutions," (3) "State constitutional and common law history," (4) "Preexisting state law," (5) "Differences in structure between the federal and state constitutions," and (6) "Matters of particular state interest or local concern." 106 Wash.2d at 61-62, 720 P.2d 808 (italics omitted).

The majority finds it significant that several states have completely eliminated juvenile LWOP as a discretionary sentence in all circumstances, with most taking this step after Miller. Majority at 352 (citing state statutes). It acknowledges, however, that the approach taken by Washington and other states is consistent with Miller . Id. at 352.

We also recognized in Ramos that "the Miller Court left state legislatures with considerable flexibility to develop their own procedures for implementing its substantive holding." 187 Wash.2d at 440, 387 P.3d 650. "[T]he fixing of legal punishments for criminal offenses is a legislative function." State v. Ammons, 105 Wash.2d 175, 180, 713 P.2d 719, 718 P.2d 796 (1986). It is " 'the function of the legislature and not of the judiciary to alter the sentencing process.' " Id. (quoting State v. Monday, 85 Wash.2d 906, 909-10, 540 P.2d 416 (1975) ).

In his cross petition for review by this court, Bassett challenged the sentencing judge's exercise of discretion. See Cross-Pet. for Review (requesting review regarding whether it is constitutional to (1) allow a judge to decide the presence of an aggravating circumstance necessary to impose a juvenile LWOP sentence, (2) allow a sentencing judge to consider information offered as mitigation of punishment into evidence justifying imposition of the most severe punishment possible for a juvenile offender, and (3) sentence a juvenile to LWOP on less than proof beyond a reasonable doubt). We rejected the cross petition, however, and thus the sole issue before us is whether RCW 10.95.030(3)(a)(ii) is constitutional. See Order, State v. Bassett, No. 94556-0 (Wash. Oct. 4, 2017); Pet. for Review at 2 ("Does the provision of the Miller -fix statute permitting a sentencing court to impose LWOP upon a juvenile murderer after fully considering mitigating factors that account for the diminished culpability of youth and the chances of rehabilitation violate our state's constitutional prohibition against cruel punishment?").