**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>          v.<br><br>MICHAEL SCOTT REYNOLDS, JR.,<br><br>               Appellant. | No. 81022-7-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

SMITH, J. — After Michael Scott Reynolds, Jr.'s,[1] trial for attempted rape and burglary, the court sentenced him to life in prison without the possibility of parole (LWOP) under the Persistent Offender Accountability Act (POAA), of the Sentencing Reform Act (SRA) of 1981, ch. 9.94A RCW. The court found that Reynolds had two prior "most serious" or "strike" offenses, which triggered a LWOP sentence under the POAA.[2] Reynolds's first POAA strike was a 2002 conviction for an attempted robbery he committed when he was 17 years old. Reynolds appeals his LWOP sentence asserting three errors, which are that the State failed to prove that one of the previous convictions was a strike offense,

---

[1] Appellant is referred to as Michael Scott Reynolds-Rodriguez, Jr. in some court documents.

[2] If a person has been convicted of three most serious offenses, they are considered a persistent offender and shall be sentenced to life in prison without the possibility of release. RCW 9.94A.030(32)(37); RCW 9.94A.570.

Citations and pin cites are based on the Westlaw online version of the cited material.

No. 81022-7-I/2

that his LWOP sentence violates state and federal constitutions, and that he was deprived of equal protection of the state and federal constitutions. Finding no error, we affirm.

FACTS

On December 30, 2001, Reynolds and his accomplices attempted to rob a convenience store with a BB[3] gun and smoke bomb. In 2002, the State charged then 17 year old Reynolds in juvenile court with attempted robbery in the first degree. The case was later transferred to adult court. Reynolds subsequently pleaded guilty to attempted first-degree assault in exchange for the State's agreement not to file any additional charges related to the BB gun or the smoke bomb and to recommend a low-end standard range sentence of 34.5 months in prison. Reynolds received a sentence consistent with this recommendation.

In January 2006, after being released from his sentence for the attempted first degree assault, Reynolds and an accomplice forced their way into a married couple's home with large bladed weapons demanding money. After Reynolds and the accomplice were not provided with money, Reynolds took the wife to an ATM[4] while threatening her with the knife and the accomplice stayed at the home threatening the husband. The accomplice was later arrested at the victims' home, and Reynolds was arrested the following day. Reynolds was initially charged with kidnapping in the first degree and attempted robbery in the first

---

[3] BB is a shot pellet 0.175 inch diameter for use in a BB gun
[4] ATM: a computerized electronic machine that performs basic banking functions (such as handling check deposits or issuing cash withdrawals), also called an automated teller machine.

2

No. 81022-7-I/3

degree, both with deadly weapon enhancements.  However, Reynolds was ultimately allowed to plead guilty to burglary in the first degree and robbery in the first degree without any enhancements.  Reynolds received a sentence of 144 months in prison and he was released in September 2017.

In February 2018, a 33 year-old Reynolds threatened M.G., a barista at a drive-through espresso stand, with a knife and then forcefully dragged her from the stand to an area with bushes where he violently attempted to rape her.  The State then charged Reynolds with burglary in the first degree and attempted rape in the second degree.  The case proceeded to a jury trial, and on January 17, 2020, the jury found Reynolds guilty as charged on both counts.  The court found that Reynolds's 2002 and 2006 convictions were both "most serious offenses" under the POAA and imposed concurrent LWOP sentences on both the burglary and attempted rape counts.  Reynolds appeals.

ANALYSIS

Reynolds challenges his judgment and sentence on three grounds.  First, he claims that because the State failed to prove that a decline hearing took place for his 2002 conviction, the conviction cannot qualify as a strike offense.  Second, he claims that his sentence under the POAA violates the Eighth Amendment to the United States Constitution and article I, section 14 of the Washington State Constitution because the court relied on his 2002 conviction, which he committed as a juvenile.  Third, Reynolds claims that the trial court deprived him of equal protection under the Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington State Constitution

3

No. 81022-7-I/4

when the court, and not a jury, found the facts necessary to sentence him as a persistent offender. As further discussed below, Reynolds's claims fail.

Most Serious Offense

Interpretation of the POAA, under the SRA of 1981, is reviewed de novo. State v. Keller, 143 Wn.2d 267, 276, 19 P.3d 1030 (2001). Under the POAA, a persistent offender shall be sentenced to a term of total confinement for life without the possibility of release. State v. Knippling, 166 Wn.2d 93, 98, 206 P.3d 332 (2009); RCW 9.94A.570. An "offender" includes "a person who has committed a felony established by state law and is eighteen years of age or older or is less than eighteen years of age but whose case[. . .]has been transferred by the appropriate juvenile court to a criminal court pursuant to RCW 13.40.110." Knippling, 166 Wn.2d at 99; RCW 9.94A.030(34). A "persistent offender" is an offender who has been convicted of a felony considered a most serious offense and has been convicted as an offender on at least two separate occasions. Knippling, 166 Wn.2d at 98-99; RCW 9.94A.030(37). A "most serious offense" includes assault in the first degree, any class B felony with a finding of sexual motivation, and any other felony with a deadly weapon verdict under RCW 9.94A.825. RCW 9A.36.011; RCW 9.94A.030(32)(r),(s). The trial court cannot sentence a defendant as a persistent offender if the State fails to meet its burden to prove a defendant was convicted of "most serious offenses." Knippling, 166 Wn.2d at 102. Under the POAA, the State bears the burden to prove by a preponderance of the evidence an accused's prior "most serious offenses" to establish their persistent offender status. Knippling, 166 Wn.2d at

100; RCW 9.94A.030(37).

Here, Reynolds claims that the State did not satisfy its burden because it did not prove that the juvenile court properly declined jurisdiction over his 2002 offense due to its failure to produce a transcript from the decline hearing. We disagree. To satisfy its burden to prove that Reynolds's 2002 conviction was a most serious offense, the State had to prove "by a preponderance of the evidence" that Reynolds's 2002 case was properly transferred to adult court. State v. Hunley, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). This, in turn required the State to prove that the juvenile court properly declined jurisdiction.

" 'Preponderance of the evidence means evidence that is more probably true than not true.' " In re Pugh, 7 Wn. App. 2d 412, 422, 433 P.3d 872 (2019) (quoting In re Welfare of Sego, 82 Wn.2d 736, 739 n. 2, 513 P.2d 831 (1973)). "The best evidence of a prior conviction is a certified copy of the judgment of conviction, but the State may use any documents of record or transcripts of prior proceedings to establish criminal history." State v. Mitchell, 81 Wn. App. 387, 390, 914 P.2d 771 (1996). "If there is no record of the declination hearing, we can presume that no such hearing occurred." Knippling, 166 Wn.2d at 102.

To support this claim, Reynolds asserts that there was no evidence that he was even represented by counsel. However, the State produced a certified copy of the juvenile court's decline order, the minutes of the decline hearing, and a copy of the juvenile probation report submitted by Reynolds's juvenile counselor. In addition, the certified copy of the clerk's minutes indicates that the hearing took place on January 16, 2002, counsel for Reynolds was present, the

5

declination report was admitted, and Reynolds stipulated to decline jurisdiction to adult court. The hearing, findings, and order for decline of jurisdiction indicate that declining jurisdiction was in the best interest of the juvenile or the public and that the juvenile court declined jurisdiction and transferred the case to adult court. Although there is no transcript of the decline hearing, there is sufficient documentation to establish the decline hearing took place and that Reynolds was represented by counsel. The trial court did not err by concluding that the State met its burden to prove that the 2002 conviction was properly under adult court jurisdiction. Cf. Knippling, 166 Wn.2d at 101 (where our Supreme Court held that the State failed to prove "strike" status of a prior offense because Knippling was convicted at 16 years of age and "there was no evidence in the record that the superior court had jurisdiction over him"). Because the existence of a decline hearing is the basis on which Reynolds's challenges the "strike" status of his 2002 conviction, the trial court did not err by including that conviction as a "strike" offense.

Life Without the Possibility of Parole Sentence

Reynolds asserts that because he committed his first strike offense when he was a juvenile, his LWOP sentence violates both the Eighth Amendment's prohibition on cruel and unusual punishment and article I, section 14 of the Washington State Constitution, which also prohibits cruel punishment. He advances two claims in support of this assertion. First, he contends that the Eighth Amendment and article I, section 14 categorically bar a LWOP sentence for an offender whose first strike under the POAA was committed as a juvenile.

6

No. 81022-7-I/7

Second, he claims that even if this sentence is not categorically barred, it violates article I, section 14 under the analysis set forth in State v. Fain, 94 Wn.2d 387, 397, 617 P.2d 720 (1980). Each of these claims present constitutional questions, which we review de novo. State v. Abrams, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008). As discussed below, we reject both claims.

1. Categorical Bar Analysis

The Eighth Amendment to the United States Constitution and article I, section 14 of the Washington State Constitution both categorically bar sentencing practices based on disproportionality "between the culpability of a class of offenders and the severity of the penalty." Miller v. Alabama, 567 U.S. 460, 470, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); WASH. CONST. art. I, § 14. "Mandatory life-without-parole sentences for juveniles violate the Eighth Amendment" because children are constitutionally different from adults for sentencing purposes. Miller, 567 U.S. at 470. Accordingly, mandatory sentencing schemes failing to take into account the fact that "children are different" are constitutionally infirm. State v. Houston-Sconiers, 188 Wn.2d 1, 18, 391 P.3d 409 (2017) (holding that Eighth Amendment requires courts to consider the mitigating characteristics of youth, and use appropriate discretion, in sentencing juvenile offenders). The Washington State Constitution is more protective than the Eighth Amendment when evaluating juvenile sentences and proportionality under the POAA. State v. Moretti, 193 Wn.2d 809, 820, 446 P.3d 609 (2019). Therefore, if a sentencing scheme is not cruel under our state constitution, "it is necessarily not cruel and unusual under the Eighth

7

No. 81022-7-I/8

Amendment." Moretti, 193 Wn.2d at 820. Statutes are presumed constitutional, and the defendant challenging the statute has the burden to prove otherwise beyond a reasonable doubt. State v. Bassett, 192 Wn.2d 67, 77, 428 P.3d 343 (2018).

We observe that our Supreme Court recently held in Moretti that "it is not categorically cruel under article I, section 14 of the Washington Constitution to impose mandatory sentences of life without the possibility of parole under the POAA on adult offenders who committed one of their prior most serious offenses as young adults." Moretti, 193 Wn.2d at 818. We determine whether a sentencing scheme is categorically barred under article I, section 14 of the Washington State Constitution by applying a two part test. Id.at 821-22. First, we determine whether there is a national consensus against the type of sentence applied, and then we consider the exercise of the court's independent judgment. Id. at 823. Reynolds contends that the two part test mandates a different result for those who committed their first offenses as juveniles because juveniles are a protected class, and a LWOP sentence under the POAA is a mismatch between culpability and the severity of the penalty. We disagree.

A. National Consensus

To determine whether a national consensus exists as to the sentencing at issue, we analyze the " 'objective indicia of society's standards as expressed in legislative enactments and state practice.' " Id. at 821 (internal quotation marks omitted) (quoting Bassett, 192 Wn.2d at 85). It is the consistency of direction of change that is significant and not the number of states that follow a certain

8

practice. Id. The burden is on the defendant to show that a national consensus exists. Id.

Moretti and other petitioners who committed their first strike offense as young adults claimed that "states overwhelmingly prohibit the use of juvenile offenses to drastically enhance later sentences under recidivist schemes." Id. (emphasis omitted). However, our Supreme Court upheld their sentences, partly reasoning that they did not provide evidence of a national consensus on prohibiting the use of convictions as young adults to enhance a sentence imposed on an offender who commits a third strike as an older adult. Id. at 821-22.

Here, Reynolds asserts that there is an emerging national consensus against the use of juvenile strikes in the calculation of sentencing enhancements. But, as explained above, Reynolds's 2002 matter was properly transferred to adult court, so it was not a juvenile strike. Moretti, 193 Wn.2d at 821 ("[T]he POAA already prohibits counting a juvenile adjudication as a strike offense"). Reynolds cites to scholarly articles and cases to support his reasoning that a person should not be punished later in life for prior criminal activity committed as a juvenile. But the scholarly articles and cases that Reynolds cites are not applicable because they focus on juvenile adjudication rather than adult POAA convictions based on prior offenses committed by a juvenile tried in adult court. Although there is a rising national consensus that juveniles and adults are different and courts have expressed this through Miller and Houston-Sconiers, Reynolds was not a juvenile when he was sentenced and the crime he was

sentenced for was a crime that he committed as an adult. Therefore, like the petitioners in Moretti, Reynolds fails to present evidence of a national consensus applying to recidivist statutes, such as the POAA, that punish adults with a LWOP sentence who committed a prior strike offense when they were a juvenile and were tried in adult court.

B. Independent Judgment

The second step in the categorical bar analysis requires the court to exercise independent judgment by considering the " 'culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question'[,] and 'whether the challenged sentencing practice serves legitimate penological goals.' " Moretti, 193 Wn.2d at 823; (emphasis omitted)(quoting Bassett, 192 Wn.2d at 87). Reynolds asserts that the sentencing court did not correctly exercise independent judgment because it failed to consider the mitigating qualities of youth that diminish culpability. He specifically claims that the court did not consider the diminished culpability of his youth when it used his 2002 conviction to sentence him under the POAA to a mandatory LWOP sentence because it is the most severe sentence possible short of death. Reynolds also claims that imposing LWOP sentences on offenders who committed their first strike offense as juveniles does not serve legitimate penological goals. We disagree.

a) Culpability

In Moretti, the petitioners claimed that because they were young adults when they committed their first strike offenses, they were less culpable than

10

No. 81022-7-I/11

other persistent offenders who committed all of their strike offenses as older adults. Moretti, 193 Wn.2d at 824. In support, they relied on psychological and neurological studies as well as case law demonstrating that parts of the brain involved in behavior control continue to develop in a person past 20 years of age. Id. at 823. Our Supreme Court stated that even though it has recognized that age can " 'mitigate a defendant's culpability . . . age is not a per se mitigating factor automatically entitling every youthful defendant to an exceptional sentence." Id.at 824, (alteration in original) (quoting State v. O'Dell, 183 Wn.2d 680, 695, 358 P.3d 359 (2015)). Our Supreme Court further stated that "trial courts [instead] are statutorily allowed to consider evidence that […] youth in fact diminished . . . the defendant's culpability." Id. The court then concluded that the petitioners did not produce "any evidence that their youth contributed to the commission of the instant offenses." Id. Additionally, the court concluded that they were not able to prove "that the brains of 32 or 41 year old men are not fully mature," and "nothing in the record suggested that they are any less culpable than any other adult offender." Id.

Here, Reynolds asserts that an adult who commits their first strike as a child has not demonstrated the same culpability and blameworthiness as a person who commits all three strikes as an adult. Reynolds asserts this is because youths' "immaturity, recklessness, and impetuosity" make them less culpable than adults. Miller, 567 U.S. at 472. Reynolds further claims that the court must not have considered the mitigating qualities of youth that diminish culpability for his prior offense when it gave him the LWOP sentence because his

11

first strike offense was committed with a BB gun, which resulted in no injuries or theft.

However, like the petitioners in Moretti, Reynolds did not present any evidence that his youthful characteristics in fact contributed to the commission of his most recent offense. Although it is true that immaturity, recklessness, and impetuosity make a juvenile less culpable than an adult, Reynolds was 33 years old when he threatened a barista with a knife and violently attempted to rape her. Reynolds is not being sentenced for his 2002 conviction, and he has failed to establish that his youthfulness at the time he committed his first strike offense reduces his current culpability. Therefore, Reynolds fails to establish that he is any less culpable than any other adult offender.

    b) Severity of Punishment

The United States Supreme Court has stated that "[b]ecause juveniles have diminished culpability and greater prospects for reform . . . they are less deserving of the most severe punishments." Moretti, 193 Wn.2d at 826; (quoting Miller, 567 U.S. at 471). A LWOP sentence is inappropriate for juveniles because it does not give them the opportunity to reform and all "good behavior and character improvements become immaterial." Bassett, 192 Wn.2d at 88. A LWOP sentence is "especially harsh for children, who will on average serve more years and a greater percentage of [their] li[ves] in prison than an adult offender." Id. (quoting Graham v. Florida, 560 U.S 48, 88, 130 S.Ct. 2011, 76 L. Ed.2d 825 (2010)). "Many of the cases exempting juveniles from harsh sentencing practices have relied on the strong prospects of juveniles for change." Moretti,

No. 81022-7-I/13

193 Wn.2d at 824.

Here, Reynolds cites to <u>Miller</u> to assert that a LWOP sentence for juveniles is similar to capital punishment and that " 'imprisoning an offender until he dies alters the remainder of his life 'by a forfeiture that is irrevocable.' " 567 U.S. at 474-75 (quoting <u>Florida</u>, 560 U.S at 69). Reynolds also attempts to demonstrate that his LWOP sentence is excessive by presenting evidence that the State previously made an unofficial offer to not count the 2002 offense as a strike under the POAA.

However, Reynolds is being sentenced for his most recent crime committed at age 33 which is aggravated by the continuous offenses throughout his life that justify a heavier penalty. See <u>Moretti</u>, 193 Wn.2d at 826 (internal quotation marks omitted) (quoting <u>State v. Lee</u>, 87 Wn.2d 932, 937, 558 P.2d 236 (1976)). (" 'POAA sentences are not punishment for the crimes the petitioners committed as young adults because recidivist statutes do not impose cumulative punishment for prior crimes. The repetition of criminal conduct aggravates the guilt of the last conviction and justifies a heavier penalty for the crime.' ") In 2002, Reynolds was sentenced to 34.5 months of incarceration. He then reoffended in 2006 and was incarcerated until 2017. After about a year of being released, Reynolds chose to commit another most serious offense. Because Reynolds has not shown that he is any less culpable than any other adult offender who committed the same crimes, punishment in accordance with the POAA is not excessive.

13

No. 81022-7-I/14

c) Penological Purpose

Reynolds claims that the penological purposes of the POAA are not served by imprisoning him for life for three reasons. First, Reynolds claims that the rationale for retribution is the offender's blameworthiness, and a juvenile, such as Reynolds was in 2002, is less blameworthy than an adult. Next, Reynolds claims that deterrence has little justification when applied to a juvenile offender because the characteristics of youth make them less likely to consider potential punishment. Finally, Reynolds claims that incapacitation cannot fairly justify his LWOP sentence as it "disregards the possibility of rehabilitation." Miller, 567 U.S. at 477-78.

In deciding if the court correctly exercised independent judgment, we must decide "whether the penological goals of retribution, deterrence, incapacitation, and rehabilitation are served by this sentence." Bassett, 192 Wn.2d at 88. The concept of retribution in a sentence is diminished for juveniles because they have diminished capacity. Id. at 89. Deterrence is also diminished because " 'the same characteristics that render juveniles less culpable than adults' " make it difficult for them to consider punishment. Id. at 88 (quoting Roper v. Simmons, 543 U.S. 551, 161 L.Ed.2d 1 (2005)). Incapacitating a juvenile for life does not serve legitimate penological goals because " '[d]eciding that a juvenile offender forever will be a danger to society would require mak[ing] a judgment that [he] is incorrigible—but incorrigibility is inconsistent with youth.' " Id. (internal quotation marks omitted) (quoting Miller 567 U.S. at 472). Indeed, a LWOP sentence "will never serve the goal of rehabilitation" for the reason that someone spending the

14

rest of their life in prison will never benefit from having been rehabilitated.

Moretti, 193 Wn.2d at 826-27.

The main purpose of the POAA is " 'deterrence of criminals who commit three most serious offenses and the segregation of those criminals from the rest of society.' " Id. at 827 (quoting State v. Witherspoon, 180 Wn.2d 875, 888, 329 P.3d 888 (2014)). "Article I, section 14 does not categorically prohibit imposing a life without parole sentence on a fully developed adult offender who committed one of their prior strike offenses as a young adult." Id. at 830.

Here, Reynolds's sentence is not retribution, deterrence, or incapacitation for the crime he committed when he was a juvenile. The enhanced penalty was given because he is a repeat offender who committed his third serious crime at 33 years of age. Furthermore, "'[t]he main purposes of the POAA are deterrence of criminals who commit three 'most serious offenses' and the segregation of those criminals from the rest of society.'" Id.at 827 (alteration in original)(quoting Witherspoon, 180 Wn.2d at 888). That purpose is being served by Reynolds's sentence. Therefore, Reynolds fails to show that his LWOP sentence does not serve the penological purpose of the POAA.

In short, Reynolds fails to show that there is a national consensus on LWOP sentences for adults under the POAA based on a strike offense committed as a juvenile or that the court did not correctly exercise independent judgment in imposing an LWOP sentence. Accordingly, we reject Reynold's assertion that article I, section 14 and the Eighth Amendment categorically bar his LWOP sentence because he committed his first strike offense as a juvenile.

15

No. 81022-7-I/16

Article I, section 14 allows courts to impose mandatory LWOP sentences under the POAA on offenders like Reynolds who committed a prior most serious offense as a juvenile. Id. at 830.

Disproportionality

Reynolds claims that even if his LWOP sentence is not categorically barred, a combination of the Fain factors renders his sentence unconstitutional under article I, section 14. We disagree.

A sentence may be cruel under article I, section 14 if it is grossly disproportionate to the offense. Moretti, 193 Wn.2d at 830. The four factors courts consider in deciding whether a LWOP sentence is proportional under article I, section 14 are (1) the nature of the offense; (2) the legislative purpose behind the sentencing statute; (3) the punishment imposed in other jurisdictions for the same offense; and (4) the punishment imposed for other offenses in the same jurisdiction. Fain, 94 Wn.2d at 397.

Reynolds specifically contends that his LWOP sentence under a combination of the Fain factors is excessive for three reasons. The first reason Reynolds gives is that he was a juvenile when he committed his first strike offense. Second, Reynolds points out that although his previous strike offenses were robberies, he is serving the same sentence as a person convicted of multiple counts of murder in the same jurisdiction. Third, Reynolds notes that he is serving the same sentence as a POAA offender who committed all three strikes as a fully formed adult.

Nevertheless, Reynolds's sentence is not unconstitutional. As for the first

16

Fain factor, the nature of Reynolds's most recent offense—attempted rape with a deadly weapon—was violent and traumatic for the victim. In Moretti, our court upheld Moretti's LWOP sentence under the POAA. 193 Wn.2d at 830-32. Moretti was found guilty of first degree robbery and second degree assault with no evidence that his youthfulness affected his behavior. Id. "Moretti beat a man with a bat in order to rob him, breaking the bat against the victim's arms." Id. at 831. "Moretti and his companion also attacked a second man, splitting open his forehead, the back of his head, and his ear." Id.

Here, similarly, Reynolds was found guilty of burglary in the first degree and attempted rape with special allegations with no evidence that his youthfulness affected his behavior. Reynolds premeditated his attack on the coffee barista, dragged her out of the window, threatened her with a knife to her throat as he violently attempted to rape her, and then strangled her to near unconsciousness when she tried to stop him.

Additionally, like in Moretti, Reynolds also committed two most serious offenses, of which he was found guilty. Moretti, 193 Wn.2d at 821. In his 2002 prior strike conviction, Reynolds pleaded guilty in adult court for attempted robbery in the first degree for a crime he committed at 17-years of age.[5] Reynolds and four companions planned and then attempted to rob a gas station store with a BB gun that looked like a real gun and a smoke bomb.[6] Reynolds pointed the BB gun at the gas station clerk and demanded money before being

---

[5] CP at 554.
[6] CP at 387.

17

told to leave to which a companion then lit the smoke bomb inside of the store.[7] Further, in his 2006 prior strike offense, Reynolds and an accomplice forced their way into an occupied home where Reynolds then took a woman from the home to an ATM threatening her at knifepoint. In applying this factor, it is apparent that each of the crimes that underlies Reynolds's conviction as a habitual offender involved the use of threat of violence to obtain his goal. The nature of Reynolds's crime supports a conclusion that the punishment imposed on Reynolds is proportional to the crime he committed.

Second, as stated above, the purpose of the POAA is to segregate criminals who have committed three most serious offenses from the rest of society. Moretti, 193 Wn.2d at 827. Reynolds committed three most serious offenses and has not been able to demonstrate that he is willing to change his behavior and to stop endangering the public. The legislative purpose of the POAA supports a conclusion that Reynolds's LWOP sentence is proportional to his offense.

Third, as for the punishment that offenders would have received in other jurisdictions, "13 other states impose mandatory sentences of life without parole on offenders who continue to recidivate. A total of 34 states appear to have some sort of habitual offender statute, many of which allow or require imposing life sentences." Moretti, 193 Wn.2d at 833. Reynolds did not receive a sentence that is uncommon for a recidivist offender. Furthermore, although each state has its own threshold for what qualifies as a strike offense and even if Reynolds could

---

[7] CP at 387.

18

have received a shorter sentence in another jurisdiction, that fact alone is not dispositive. Witherspoon, 180 Wn.2d at 888.

Lastly, if Reynolds had committed a different most serious crime in the same jurisdiction, he would have received the same punishment. "'[I]n Washington, all adult offenders convicted of three most serious offenses are sentenced to life in prison without the possibility of release under the POAA.'" Moretti, 193 Wn.2d at 833 (quoting Witherspoon, 180 Wn.2d at 888). Therefore, consideration of the Fain factors does not establish that Reynolds's sentence is unconstitutional under article I, section 14.

### Equal Protection

Reynolds further claims that because the State was not required to prove the existence of his prior strike offenses to a jury beyond a reasonable doubt, his sentence violates the equal protection clause of the Fourteenth Amendment and article I, section 12 of the Washington State Constitution. We disagree.

The Fourteenth Amendment and article I, section 12 require "persons similarly situated with respect to the legitimate purpose of the law must receive like treatment." State v. Coria 120 Wn.2d 156, 169, 839 P.2d 890 (1992). Because repeat offenders do not constitute a suspect or semi-suspect class and physical liberty is not a fundamental right, the proper standard of review for an equal protection challenge to the "three strikes law" is rational basis. State v. Manussier, 129 Wn.2d 652, 673-74, 921 P.2d 473 (1996). See also Coria, 120 Wn.2d at 169-171 (the rational basis test applies when a statutory classification does not involve a suspect or semi-suspect class and does not threaten

19

No. 81022-7-I/20

fundamental rights, and when a physical liberty alone is involved in a statutory classification).

The rational basis test requires that the statute have a legitimate state objective and the statute's means must be rationally related to that goal. Coria, 120 Wn.2d at 173. The statute's means do not have to be the best way of achieving that goal. Coria, 120 Wn.2d at 173. When applying rational basis review, this court has held that "recidivists whose conduct is inherently culpable enough to incur a felony sanction are, as a group, rationally distinguishable from persons whose conduct is felonious only if preceded by a prior conviction for the same or a similar offense." State v. Salinas, 169 Wn. App. 210, 226, 279 P.3d 917 (2012) (quoting State v. Langstead, 155 Wn. App. 448, 457, 228 P.3d 799 (2010)). Our court has also "'repeatedly rejected' the argument that a jury must determine the existence of prior convictions'" for sentencing purposes. Salinas, 169 Wn. App. at 225-26 (quoting State v. Thiefault, 160 Wn.2d 409, 418, 158 P.3d 580 (2007)).

When evaluating equal protection challenges under the rational basis test, the three factors we consider are: (1) whether the classification applies to all members within the designated class alike, (2) whether some rational basis exists for reasonably distinguishing between those within the class and those outside the class, and (3) whether the challenged classification bears a rational relation to the purpose of the challenged statute. Morris v. Blaker, 118 Wn.2d 133, 149, 821 P.2d 482 (1992).

Here, Reynolds points out that some crimes require proof of a prior

20

conviction beyond a reasonable doubt as an element of the crime. He asserts that because the rational basis test applies to equal protection challenges raised in recidivist criminal cases, there is no rational basis for classifying the punishment for recidivist criminals as an element in certain circumstances and an aggravator in others. Apprendi v. New Jersey, 530 U.S. 466, 476, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (internal quotation marks omitted) ("Merely using the label sentence enhancement to describe a [sentencing element] surely does not provide a principled basis for treating them differently"). He then contends that equal protection under the constitution requires that the existence of prior felonies to increase a sentence should be proven to a jury as an element of the crime under the reasonable doubt standard. State v. Roswell, 165 Wn.2d 186, 192, 196 P.3d 705 (2008) (where a prior conviction alters the crime that may be charged, the prior conviction is an essential element that must be proved beyond a reasonable doubt); Alleyne v. United States, 570 U.S. 99, 103, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013) (facts that increase the mandatory minimum sentence are elements and must be submitted to the jury and found beyond a reasonable doubt). However, both the Washington Supreme Court and this court have repeatedly concluded that the legislature did not intend for the POAA to classify the persistent offender finding as an element that would need to be proven to a jury. Thiefault, 160 Wn.2d at 418; Salinas, 169 Wn. App. at 225-26.

Reynolds supports his claims by citing to Roswell, Apprendi, and Alleyne. In Roswell, the defendant was charged under the communication with a minor for immoral purposes statute, which is usually a gross misdemeanor, but because

21

No. 81022-7-I/22

the defendant had prior sex offense convictions, he was found guilty of a felony. 165 Wn.2d at 190. The court held that prior offense convictions were elements that had to be proved to the jury beyond a reasonable doubt under the communication with a minor for immoral purposes statute. Roswell, 165 Wn.2d at 194.

In Apprendi, the trial court found by a preponderance of the evidence that the shooting by the defendant was racially motivated, and increased his sentence. 530 U.S. at 466, 471. The defendant appealed, claiming that the "Due Process Clause" of the United States Constitution requires that a bias finding should be proved beyond a reasonable doubt. Apprendi, 530 U.S. at 471. The appeal made its way to the United States Supreme Court, and the Court held that,

> [U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (*other than prior conviction*) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt. The Court further held that the Fourteenth Amendment commands the same answer.

Apprendi, 530 U.S. at 476 (emphasis added) (quoting Jones v. United States, 526 U.S. 227, 243 n.6, 119 S. Ct. 1215, 143 L. Ed. 2d 311 (1999)).

In Alleyne, the defendant appeals the court imposed minimum sentence for possession of a firearm in relation to a robbery. 570 U.S. at 99. The defendant claimed that because the jury did not find that he brandished his weapon "beyond a reasonable doubt and that raising his mandatory minimum sentence based on a sentencing judge's finding of brandishing would violate his Sixth Amendment [to the United States Constitution] right to a jury trial." Alleyne,

22

No. 81022-7-I/23

570 U.S. at 99. The Court held that "[b]ecause mandatory minimum sentences increase the penalty for a crime, it is an element that must be submitted to a jury.' Alleyne, 570 U.S. at 99.

However, Reynolds's interpretation of Roswell, Apprendi, and Alleyne is incorrect. Contrary to Reynolds's interpretation, the Court in Roswell explained that "[d]espite the similarities between an aggravating factor and a prior conviction element under RCW 9.68A.090(2), a prior sexual offense conviction is an essential element that must be proved beyond a reasonable doubt" because "[t]he prior conviction is not used to merely increase the sentence beyond the standard range[,] but actually alters the crime that may be charged." Roswell, 165 Wn.2d at 192. This case is also different than Roswell because Reynolds has committed multiple serious offense crimes and recidivists are, as a group, different than people whose conduct is felonious only if preceded by prior convictions for the same or similar offense. As for in Apprendi, the Court explicitly states that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." 530 U.S. at 476 (quoting Jones 243 n.6)). Lastly, in Alleyne, the Court upheld Apprendi and concluded that their ruling in the case did not mean that "any fact that influences judicial discretion must be found by a jury." Alleyne, 570 U.S. at 116. Therefore, requiring persistent offender status to be proven only by a preponderance of the evidence and only to a judge—not a jury—does not violate equal protection.

Because the State proved the 2002 conviction was a strike offense, the

23

No. 81022-7-I/24

LWOP sentence does not deprive Reynolds of equal protection, and the LWOP sentence does not constitute cruel and unusual punishment, we affirm.

WE CONCUR: