# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55315-5-II |
| Respondent, | |
| v. | |
| JOHN FREDRICK DOLL, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—John Fredrick Doll fired a rifle across a street, gravely injuring a neighbor's pet cat. Neighbors found the injured cat the next morning and it had to be euthanized. After a bench trial, Doll was convicted of first degree animal cruelty and discharge of a firearm in a public place. As required by statute, the trial court prohibited Doll from owning, caring for, or residing with any similar animal, including his pet dog, as part of his sentence.

Doll appeals. He argues that the State did not prove an essential element of first degree animal cruelty and that the animal cruelty statute is unconstitutionally vague. He also contends that the postconviction mandatory ban on owning similar animals violates the cruel punishment clause of article I, section 14 of the Washington Constitution and the Eighth Amendment to the United States Constitution.

We affirm Doll's convictions and sentence. We hold that sufficient evidence supports the challenged conviction, and that the animal cruelty statute is not unconstitutionally vague as applied to Doll's conduct. And we hold that the lifetime ban on owning similar animals that arose as a result of Doll's conviction for first degree animal cruelty did not violate article I, section 14 or the Eighth Amendment.

FACTS

One night in May 2020, Doll fired two bullets at a cat in an alley across the street from his backyard. Neighbors heard the gunfire and the cat's cry of pain around 9:00 p.m. and went to investigate in the daylight the next morning. They found the cat in an alley behind their house, across the street from Doll's house. The cat was visibly injured, vocalizing in pain, and had no use of its hind legs. The cat's owner took it to an emergency veterinarian. Due to a spinal cord injury and a poor prognosis for recovery, the cat was euthanized.

Police searched Doll's residence and found a .22 caliber rifle loaded with ammunition. Police also found a .22 caliber shell casing near the fence that bordered Doll's property in a location with "a direct clear view of where the cat was shot." Verbatim Report of Proceedings (VRP) (Sept. 23, 2020) at 60. The distance from the fence to the location of the cat was approximately 45 yards, about half a football field.

The State charged Doll with first degree animal cruelty, reckless endangerment, and discharge of a firearm in a public place. For animal cruelty, the State alleged that Doll "intentionally and unlawfully inflict[ed] substantial pain on and cause[d] physical injury to, to-wit: a cat named Ebony, by means causing undue suffering to said animal or while manifesting an extreme indifference to life." Clerk's Papers (CP) at 17. Doll waived his right to a jury trial.

A.      Bench Trial

Joseph Edmonson, a neighbor who heard the gunshots and found the cat, testified at Doll's bench trial. Edmonson testified that he and his family were outside in their backyard around 9:00 p.m. when they heard two gunshots approximately 30 seconds apart, the second followed by the cat's scream. The scream came from the alley behind Edmonson's house. Edmonson, who had

experience with firearms from hunting, identified the shots as coming from "a high-powered air rifle or like a light load .22 that might be used for shooting grouse." VRP (Sept. 23, 2020) at 24. He believed the shots were fired from across the street. Doll's house was directly across the street from Edmonson's house, and there were no other houses nearby on that side of the street. Edmonson did not believe the shots could have come from a pedestrian on the street because his dogs were in his yard at the time of the shooting and would have barked at someone walking along the street.

The veterinarian testified that the cat was vocalizing in pain when examined the next morning and that it had no use of its hind legs. The injury to the cat's spine was consistent with a gunshot or "trajectory-type" wound. *Id.* at 47. The cat's prognosis was "poor to grave," so it was euthanized. *Id.* at 48.

Doll and his wife both testified that Doll had been watching television at a cousin's house until midnight on the night in question. Doll testified he found a cat inside his fenced yard when he returned home after midnight, and that particular cat had previously scratched him and his dog. Doll testified that he got his .22 pistol, shot at the cat while it was inside his yard, then reached over his fence and fired into the ground after the cat fled. Doll said that he only wanted to scare the cat with the noise of the gunshots.

The trial court found that Edmonson was a credible witness and that Doll's and his wife's testimony was not persuasive.

The trial court discussed the elements of first degree animal cruelty in its oral ruling and written findings of fact and conclusions of law. The trial court found that Doll fired two shots from a .22 caliber rifle from over his fence into the alley, a distance of approximately 45 yards. Because

of the distance between Doll's property and the cat's location, the trial court concluded that "Doll was intentionally shooting at [the cat] to, at a minimum, cause substantial pain and physical injury." *Id.* at 131. "Aiming and firing twice at a cat located 45 yards away shows intent [to shoot the cat] and an indifference to life." CP at 41. When Edmondson found the cat, it "had been laying in the alley, suffering, for nearly twelve hours." *Id.*

The trial court orally stated that its findings were intended to cover both possible means of first degree animal cruelty charged by the State—inflicting substantial pain on and causing physical injury to an animal—with additional findings that Doll committed his actions by means "causing undue suffering . . . or while manifesting extreme indifference to life" by shooting across the street. VRP (Sept. 23, 2020) at 136. "It's not like you're going to put the animal down by shooting it in a location where you know the animal will die instantly." *Id.* The trial court concluded that Doll "intentionally and unlawfully inflicted both substantial pain and physical injury" to the cat and that "the substantial pain and physical injury was inflicted in a manner causing undue suffering and manifesting an extreme indifference to life." CP at 43. The trial court found Doll guilty of first degree animal cruelty and of discharging a firearm in a public place but acquitted him of reckless endangerment.

B.    Sentencing

Doll was sentenced to 30 days of confinement. In addition, former RCW 16.52.200(4)(b) (2016) permanently barred anyone convicted of first degree animal cruelty "from owning, caring for, or residing with any similar animals" to the one harmed in the offense.[1] "Similar animal" was

---

[1] The legislature has since amended the statute to provide that a conviction for first degree animal cruelty results in a lifetime ban on "owning, caring for, possessing, or residing with any animals,"

defined as "[f]or a mammal, another animal that is in the same taxonomic order." Former RCW 16.52.011(2)(q) (2019). This prohibition was included in Doll's judgment and sentence.

At the time of his sentencing, Doll owned a dog. Cats and dogs are the same taxonomic order, Carnivora. The trial court informed Doll at sentencing that he would not be able to have a household pet. The trial court also prohibited Doll from owning or possessing firearms and required forfeiture of the firearm used to shoot the cat.

Doll filed a CrR 7.8 motion seeking relief from the prohibition on owning similar animals. At the CrR 7.8 hearing, Doll argued that the trial court had discretion to find that dogs and cats are not similar animals in the "common understanding." VRP (Nov. 9, 2020) at 27. The State responded that the plain language of former RCW 16.52.011(2)(q) did not allow the trial court any discretion. The trial court noted that it would have allowed Doll to keep his dog if it had discretion but stated, "I'm constrained by the law and the ordinary meaning and the statutory definition of the meaning of those terms." *Id.* at 28. The trial court informed Doll that he would need to find another home for his dog.

Doll appeals his conviction and sentence. He did not assign error to any of the trial court's findings of fact. Doll seeks reversal of his conviction for first degree animal cruelty or, in the alternative, asks this court to strike the prohibition on owning similar animals from his judgment and sentence.

---

not just similar animals. Former RCW 16.52.200(4) (2016), *amended by* LAWS OF 2020, ch. 158, § 5.

ANALYSIS

I. ELEMENTS AND PROOF OF FIRST DEGREE ANIMAL CRUELTY

Doll argues that we should reverse his conviction for first degree animal cruelty because the State did not prove that his act of shooting the cat was not "'authorized in law,'" which he claims is an essential element of first degree animal cruelty. Br. of Appellant at 11. Without challenging the trial court's findings of fact, Doll asserts that the State "did not prove that Mr. Doll intentionally shot the cat." *Id.* And he claims the State "offered no evidence of when the infliction of injury on an animal is authorized by law." *Id.* at 11-12.

A.      Elements of First Degree Animal Cruelty

To determine the elements of first degree animal cruelty, we begin by considering the plain language of the statute establishing the crime. First degree animal cruelty occurs when a person "except as authorized in law . . . intentionally (a) inflicts substantial pain on, (b) causes physical injury to, or (c) kills an animal by a means causing undue suffering or while manifesting an extreme indifference to life," or forces a minor to do so. RCW 16.52.205(1).

In general, the animal cruelty laws are not intended to interfere with "'game laws,'" the right to kill animals for food, or other limited exceptions. RCW 16.52.180. At the time of Doll's offense, RCW 16.52.185 and former RCW 16.52.205(6) (2015) identified further circumstances that were "explicitly not criminalized under" RCW 16.52.205(1). *Nw. Animal Rights Network v. State*, 158 Wn. App. 237, 239, 242 P.3d 891 (2010). Former RCW 16.52.205(6) provided, "Nothing in this section may be considered to prohibit accepted animal husbandry practices or accepted veterinary medical practices." RCW 16.52.185 listed several additional exceptions to the

animal cruelty laws, including the normal course of rodeos and fairs and the commercial slaughter of livestock.

We hold that the phrase "except as authorized in law" does not create an essential element of the offense of first degree animal cruelty. RCW 16.52.205(1). The term refers to the activities authorized by RCW 16.52.180, .185, former RCW 16.52.205(6), or some other law, and explains that those activities are excluded from the scope of RCW 16.52.205(1).

B.      Sufficiency of the Evidence

Doll argues the State failed to prove that he intentionally shot the cat. We disagree.

When reviewing sufficiency of evidence, we examine whether, viewing the evidence in the light most favorable to the State, "'any rational trier of fact could have found guilt beyond a reasonable doubt.'" *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). A defendant who challenges the sufficiency of the evidence "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. We will not review credibility determinations made by a trier of fact. *State v. Cardenas-Flores*, 189 Wn.2d 243, 266, 401 P.3d 19 (2017). And Doll does not challenge the trial court's findings of fact, which thus become verities on appeal. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

This court has held that there was sufficient evidence of intent to kill an animal through means causing undue suffering when the defendants tied a dog to a tree and repeatedly shot it with arrows or when a different defendant stabbed a kitten multiple times with a hunting knife. *See, e.g.*, *State v. Paulson*, 131 Wn. App. 579, 588, 128 P.3d 133 (2006); *State v. Andree*, 90 Wn. App. 917, 923, 954 P.2d 346 (1998).

The State charged Doll under both RCW 16.52.205(1)(a) and (b). RCW 16.52.205(1)(a) requires intentional infliction of substantial pain on an animal, and (b) requires physical injury to an animal. The State's amended information alleged that Doll "did intentionally and unlawfully inflict substantial pain on and cause physical injury to" the cat "by means causing undue suffering to said animal or while manifesting an extreme indifference to life." CP at 17. Doll did not argue below or on appeal that he shot the cat for food, veterinary, or animal husbandry purposes. And while Doll asserted that the cat had previously scratched him and his dog, the trial court found that the cat was not on Doll's property when he shot it, but was a significant distance away, in an alley across a road.

The trial court found that Edmonson was credible and did not find Doll's or his wife's alibi testimony persuasive. The trial court found that Edmonson, at approximately 9:00 p.m., heard two gunshots 30 seconds apart from across the street, followed by a cat's scream of pain in the alley behind his house. There was "a line of sight" from Doll's fence line to the alley. CP at 41. Doll fired the shots from a ".22 caliber rifle, from behind his southeast fence line," shooting across a distance of "approximately 45 yards." *Id.* The trial court found that when Edmonson discovered the cat the next morning, it was "in significant pain" and "had been laying in the alley, suffering, for nearly twelve hours" with a spinal fracture "consistent with a gunshot wound" and no use of its hind legs. *Id.* Because Doll does not challenge these findings, they are verities on appeal.

Taking the State's evidence as true and drawing all reasonable inferences in the State's favor, a rational trier of fact could conclude that Doll intentionally caused both substantial pain and physical injury to the cat. *Salinas*, 119 Wn.2d at 201. Because Doll shot the cat when it was 45 yards away, well off of his property, without any justification except an assertion that the cat

8

had previously scratched him, these findings also support the trial court's conclusion that none of the statutory exceptions applied that would render Doll's conduct lawful.

The trial court also found that Doll "intentionally and unlawfully inflicted both substantial pain and physical injury" on the cat and that "the substantial pain and physical injury was inflicted in a manner causing undue suffering and manifesting an extreme indifference to life." CP at 43. In *Andree*, Division One held that "the term 'undue suffering' does not modify the terms 'substantial pain' or 'physical injury,'" so undue suffering is not a necessary element of the crime. 90 Wn. App. at 920. But even if undue suffering were required here, a rational trier of fact could conclude that, due to the low probability of killing the cat instantly when shooting 45 yards across a road in the dark, and because Doll did not go check whether the cat was merely injured after it screamed, Doll's conduct evidenced an unlawful intent to cause undue suffering and manifested an extreme indifference to life. Thus, we hold that the State presented sufficient evidence to support Doll's conviction for first degree animal cruelty.

## II. VAGUENESS

Doll claims that we should reverse his conviction for first degree animal cruelty because RCW 16.52.205(1) is unconstitutionally vague. He asserts that the statute provides insufficient notice of prohibited conduct because a person of common intelligence would necessarily have to guess "the meaning of animal or . . . what animals would be legal to kill." Br. of Appellant at 17. Doll also argues that the statute provides insufficient guidelines to prevent arbitrary enforcement, claiming that pouring salt on a slug, pinning a butterfly to a collection board, and killing a rabbit for food would all violate the statute. We disagree.

9

The Fourteenth Amendment to the United States Constitution requires criminal statutes to provide "adequate notice of the proscribed conduct" and "adequate standards to prevent arbitrary enforcement." *Andree*, 90 Wn. App. at 921. RCW 16.52.205(1) does not involve freedoms protected by the First Amendment to the United States Constitution, so we will consider the vagueness challenge only as the statute applies to Doll. *Id*. at 919-20. If a person "'of ordinary intelligence can understand a penal statute, *notwithstanding some possible areas of disagreement*,'" a statutory term is not unconstitutionally vague. *Id*. at 921 (internal quotation marks omitted) (quoting *City of Seattle v. Eze*, 111 Wn.2d 22, 27, 759 P.2d 366 (1988)).

RCW 16.52.011(2)(b) defines "animal" as used in chapter 16.52 RCW to mean "any nonhuman mammal, bird, reptile, or amphibian." But for the purposes of the first degree animal cruelty section, "'[a]nimal' means every creature, either alive or dead, other than a human being." Former RCW 16.52.205(8)(a) (2015).

Doll argues that a person of common intelligence will not know whether killing a fly, rat, worm, or fish is illegal under the statute and that it is technically possible to violate the statute by "killing an already dead animal." Br. of Appellant at 17.[2] But this is not the relevant question because we must consider vagueness in the context of the facts presented in this case. Absent a First Amendment challenge, the proper test for vagueness is not examination of hypothetical

---

[2] The State correctly argues that a person "of common intelligence would be able to discern that an animal that is already deceased cannot experience substantial pain, physical injury, or die again." Br. of Resp't at 16. The definition of "animal" in former RCW 16.52.205(8)(a) includes deceased animals for the purposes of .205(3), which prohibits sexual conduct with animals and the photography, filming, or other commercialization thereof. *See also* former RCW 16.52.205(8)(b), (c).

No. 55315-5-II

situations; we examine the statute only as it applies to Doll's conduct. *Andree*, 90 Wn. App. at 919-20.

Here, the trial court found that Doll fired a rifle 45 yards to strike a cat in the spine and leave it crippled, without going to check whether the cat had survived. Doll does not challenge the findings of fact that establish this version of events. A person of common intelligence would be able to discern that shooting a rifle at a cat half a football field away in the dark without checking to see if the animal was wounded is likely to cause substantial pain, physical injury, and undue suffering to the animal. Notably, after being shot the cat screamed loudly enough for a neighbor who heard the shooting to investigate. Doll claims the cat was a nuisance and he was defending himself and his dog from the aggressive cat, but the unchallenged trial court findings do not support this theory. Doll does not argue any basis supported by the facts the trial court found establishing he was acting lawfully when he shot the cat. Therefore, we hold that RCW 16.52.205(1) is not unconstitutionally vague as applied to Doll's conduct.

### III. CRUEL PUNISHMENT

Doll argues that when the trial court imposed as part of his sentence a lifetime ban on ownership of similar animals under former RCW 16.52.200(4)(b), it imposed an unconstitutionally cruel punishment in violation of article I, section 14. He also insists that this prohibition violates the Eighth Amendment. Thus, Doll contends that we should reverse the trial court's order prohibiting him from owning any similar animal. We disagree.

The State notes that if former RCW 16.52.200(4)(b) does not violate article I, section 14, the statute thus complies with the Eighth Amendment because Washington's cruel punishment

11

clause is generally more protective than the Eighth Amendment. *State v. Bassett*, 192 Wn.2d 67, 78-79, 428 P.3d 343 (2018).

As an initial matter, Doll makes the same state and federal constitutional challenges to a mandatory animal forfeiture provision in RCW 16.52.200(3). But RCW 16.52.200(3) does not apply to Doll's case because law enforcement did not seize the dog, and there was no forfeiture of the dog to law enforcement. We therefore decline to consider Doll's constitutional challenges to RCW 16.52.200(3) and confine our review to former RCW 16.52.200(4)(b), the statute that was actually applied in this case.

A.      Article I, Section 14 Challenge

Article I, section 14 forbids cruel punishment. *State v. Witherspoon*, 180 Wn.2d 875, 887, 329 P.3d 888 (2014). The State concedes that article I, section 14 is more protective than the Eighth Amendment in this context. *See State v. Manussier,* 129 Wn.2d 652, 674, 921 P.2d 473 (1996). Statutes are presumed constitutional, so a defendant challenging a statute has the burden to prove beyond a reasonable doubt that the statute is unconstitutional. *Bassett*, 192 Wn.2d at, 77.

Doll argues that former RCW 16.52.200(4)(b) is unconstitutional as applied to him under a *State v. Fain*[3] proportionality test. In his reply brief, he contends for the first time that this court should use a categorical bar analysis to evaluate the statute, emphasizing, "[T]he Court is not bound to apply *Fain*," and "the [*Bassett*] Court ruled that the categorical bar analysis was the better analysis." Reply Br. of Appellant at 17.

---

[3] 94 Wn.2d 387, 397, 627 P.2d 720 (1980).

No. 55315-5-II

1.  Categorical bar analysis

RAP 10.3(c) provides that a reply brief should "be limited to a response to the issues in the brief to which the reply brief is directed." This court has repeatedly declined to consider arguments raised for the first time in a reply brief. *See, e.g.*, *State v. Wilson*, 162 Wn. App. 409, 417 n.5, 253 P.3d 1143 (2011). Doll did not raise a categorical bar analysis in his opening brief, and the State confined its response to the *Fain* proportionality analysis, so Doll's reply does not constitute "a response to the issues in the brief to which the reply brief is directed." RAP 10.3(c). Moreover, the State has not had a chance to respond to Doll's categorical bar analysis argument.

In any event, a categorical bar analysis is not the correct lens for this case. The Washington Supreme Court in *Bassett* opted for a categorical bar analysis because Bassett asserted "a categorical challenge based on the characteristics of the offender class—children." 192 Wn.2d at 83. Pet owners do not have distinctive characteristics as a class that would make a categorical bar analysis appropriate. *See id.* at 84. We thus use only the *Fain* proportionality test to evaluate whether former RCW 16.52.200(4)(b) violates the Washington Constitution.

2.   *Fain* proportionality test

A sentence is unconstitutionally cruel "'when it is grossly disproportionate to the crime for which it is imposed.'" *State v. Moen*, 4 Wn. App. 2d 589, 598, 422 P.3d 930 (2018) (quoting *State v. Morin*, 100 Wn. App. 25, 29, 995 P.2d 113 (2000)). Under *Fain,* when evaluating whether a sentence is disproportionate to the underlying offense, a court should consider "(1) the nature of the offense;" (2) the legislative purpose behind the relevant statute; "(3) the punishment [the] defendant would have received in other jurisdictions for the same offense; and (4) the punishment meted out for other offenses in the same jurisdiction." 94 Wn.2d at 397.

13

The Supreme Court has found cruel punishments in the length of sentences, the conditions under which sentences were imposed, and the conditions of confinement. *See, e.g.*, *id*. at 402 (holding a habitual offender life sentence was grossly disproportionate to the crime of three nonviolent frauds committed over 17 years with a total damage of $470); *Bassett*, 192 Wn.2d at 90 (using both categorical and proportionality analysis to hold that life without parole sentences for juvenile defendants were cruel); *In re Pers. Restraint of Williams*, 198 Wn.2d 342, 347, 496 P.3d 289 (2021) (lack of reasonable access to bathroom facilities, running water, and assistance for disabilities for wheelchair-bound prisoner was cruel punishment). But the Supreme Court has upheld even severe sentences when the sentence was proportionate to the underlying crime. *See State v. Moretti*, 193 Wn.2d 809, 818-19, 446 P.3d 609 (2019) (using both categorical and proportionality analysis to hold that a habitual offender sentence was not cruel when imposed on an adult defendant who committed a predicate offense as a juvenile and committed rape at age 39).

    a.  Nature of the offense

Doll argues that the first *Fain* factor, the nature of the offense, weighs against proportionality because former RCW 16.52.200(4)(b) "fails to account for the differences between how the animal was killed (shot rather than tortured or mutilated), the difference between a stray cat and an indoor cat, and the difference between harming one animal and still being able to care for your own pet." Br. of Appellant at 36. But this factor analyzes the facts of the case, not the statute itself. *See Morin*, 100 Wn. App. at 30-31 (stating that the first *Fain* factor considers the seriousness of the offense as well as the facts of the specific case). And the State emphasizes that the purpose of the animal cruelty laws are "not to protect animals as property of their owners, but

to protect animals as living, feeling creatures," regardless of whether they are wild or tame. Br. of Resp't at 25.

First degree animal cruelty is a class C felony. RCW 16.52.205(4). It is not a "most serious offense" or a "violent offense." *See* former RCW 9.94A.030(33), (55) (2020). But the nature of the crime requires the intentional infliction of substantial pain, injury, or death upon an animal through a means that causes undue suffering or manifests an extreme indifference to life. RCW 16.52.205(1).

Here, Doll fired twice across a 45-yard distance to strike a cat in the spine, causing it to scream out in pain loudly enough for neighbors to hear and leaving it to suffer overnight with injuries that ultimately required euthanasia. Doll's actions caused substantial pain, injury, and undue suffering to an animal, comporting with the statutory nature of the offense.

We hold that the nature of first degree animal cruelty, especially in light of the facts of the present case, where Doll shot a cat in the dark and did not check whether it had survived, supports concluding that a lifetime prohibition on ownership of similar animals is proportionate to the crime of first degree animal cruelty.

b.       Legislative purpose

The second *Fain* factor evaluates the legislative purpose behind the statute. *See Bassett*, 192 Wn.2d at 90 (contrasting statutory protections for juvenile defendants with punishment for aggravated murder).

The legislature's purpose statement for the 1994 version of chapter 16.52 RCW indicated the legislature's desire "to modernize the law on animal cruelty to more appropriately address the nature of the offense." ENGROSSED SUBSTITUTE H.B. 1652, at 1, 53rd Leg., Reg. Sess. (Wash.

1994). The prohibition on animal ownership was first added to the statute in 2009. The Senate Bill

Report explained:

> People are allowed to mistreat animals time and again because the penalties involved are not severe enough. Right now, those who are convicted of killing or severely abusing animals are only prohibited from owning a like animal for a period of two years. Current law does not prohibit these offenders from owning other animals even though they are likely to mistreat them as well. This bill prohibits offenders, who intentionally . . . mistreat animals, from ever owning similar . . . animals again. It strengthens the guidelines for repeat offenders. . . . This type of penalty sends a message to offenders. Many other states have already passed more stringent penalties for animal mistreatment and Washington should follow suit.

S.B. REP. ON S.S.B. 5402, 61st Leg., Reg. Sess. (Wash. 2009). Further, although Doll was

sentenced under former RCW 16.52.200(4), which barred ownership of "similar animals,"

meaning those in the same taxonomic order, former RCW 16.52.011(2)(q), the legislature has since

progressed to a lifetime prohibition on owning or possessing "any animals" after a conviction of

first degree animal cruelty, RCW 16.52.200(4)(b).

Thus, for many years, the legislature has steadily increased its protection of animals

through amendments to the animal cruelty statutes. Based on the legislature's decision to expand

protections for animals while restricting the discretion afforded to trial courts sentencing for first

degree animal cruelty, Doll's sentence is consistent with the legislature's purpose. Doll does not

show that the legislature's purpose in punishing animal cruelty with a prohibition on animal

ownership contradicts the legislature's intent in any other section or chapter. Thus, this factor

supports holding that the similar animal ownership prohibition is proportionate to Doll's offense.

c.       Punishment for animal cruelty in other jurisdictions

The third *Fain* factor considers the punishment that the defendant would have received for the same crime in a different jurisdiction. 94 Wn.2d at 399. Doll argues that no other state has a mandatory lifetime ban on animal ownership as a punishment for an animal cruelty conviction.

To analyze this factor, we need not conduct "an exhaustive analysis of laws in other jurisdictions" if we can establish that Washington's law "is similar to state and federal legislation throughout much of the United States." *Morin*, 100 Wn. App. at 31-32; *see also State v. Reynolds*, __ Wn. App. 2d __, 505 P.3d 1174, 1187 (2022) (stating that 13 states impose mandatory life without parole sentences on habitual offenders and "'34 states appear to have some sort of habitual offender statute, many of which allow or require imposing life sentences'" (quoting *Moretti*, 193 Wn.2d at 833)). Furthermore the fact that a person could have received a different sentence in another jurisdiction is not dispositive. *Reynolds*, 505 P.3d at 1187.

Several states have some form of mandatory ban on allowing individuals convicted of animal cruelty to possess animals and many more have permissive bans allowing for trial court discretion. For example, a defendant convicted of attempting to kill a cat or dog in Maine may be prohibited "from owning, possessing or having on the defendant's premises an animal for a period of time that the court determines to be reasonable, up to and including permanent relinquishment." ME. STAT. tit. 17.42.3, § 1031 3-B.D(1). Virginia allows lifetime prohibitions on "possession or ownership of companion animals" at the discretion of the trial court. VA. CODE ANN. § 3.2-6570(G). In Delaware, a person convicted of felony animal cruelty "shall be prohibited from owning or possessing any animal for 15 years after said conviction," except for the licensed sale of animals or animal products. DEL. CODE ANN. tit. 11, § 1325(d). And Illinois allows courts to

impose bans for all animals on both the defendant "and persons dwelling in the same household as the convicted person who conspired, aided, or abetted in the unlawful act that was the basis of the conviction, or who knew or should have known of the unlawful act . . . for a period of time that the court deems reasonable." 510 ILL. COMP. STAT. 70/3.04(c).

In Washington, if someone violates the prohibition on owning a similar animal, civil penalties can be imposed for the first two violations and gross misdemeanors for the third and subsequent violations. Former RCW 16.52.200(8) (2016). Someone convicted twice of second degree animal cruelty may petition to have their right to own similar animals restored five years after their second conviction, but there is no restoration option for defendants convicted of first degree animal cruelty. *See* former RCW 16.52.200(5) (2016).

We have found no other state that imposes a mandatory lifetime ban on possession of animals for people convicted of first degree animal cruelty, although the nationwide trend has been to reduce trial court discretion and require longer prohibitions on animal ownership as a consequence of such convictions. We acknowledge the countervailing trend toward easing reentry and allowing defendants more opportunities for rehabilitation, which cuts against endorsing any lifetime punishment, including a permanent prohibition on animal ownership. No lifelong punishment allows the full opportunity for rehabilitation. But Washington's statute is relatively close to the national norms. We conclude that this factor supports an assessment that the permanent similar animal ownership prohibition is proportional to the crime of first degree animal cruelty.

d. Punishment for other offenses in Washington

The final *Fain* factor compares the punishment for the defendant's crime against Washington's punishments for other offenses. 94 Wn.2d at 401. Doll contends that the prohibition

on owning similar animals bars him "from permanently possessing a family member," comparing the prohibition to the loss of custody of a child. Br. of Appellant at 42. We disagree.

Doll points to no law that guarantees a fundamental right to possess animals. "Pets, as a matter of law, are considered personal property" without any constitutional protections for ownership. *State v. Abdi-Issa*, 199 Wn.2d 163, 171, 504 P.3d 223 (2022). There is no legal support for Doll's assertion that the ability to possess a pet is comparable to the fundamental right to parent.

Ultimately, our laws perceive pets as personal property. *Id*. Owning an animal is a privilege, not a right. Washington revokes driver's licenses for vehicle-related offenses that do not necessarily involve any harm to persons or property, for example. S*ee* RCW 46.65.020. Revocation can occur even though the ability to operate a motor vehicle is crucial to the necessities of life and participation in society.

We also emphasize that the legislature's punishment for animal cruelty is not without nuance. A person commits second degree animal cruelty if they "knowingly, recklessly, or with criminal negligence inflict[] unnecessary suffering or pain upon an animal," abandon an animal, or fail "to provide the animal with necessary shelter, rest, sanitation, space, or medical attention and the animal suffers unnecessary or unjustifiable physical pain as a result of the failure." Former RCW 16.52.207(1), (2) (2019). At the time of Doll's offense, a single conviction for second degree animal cruelty resulted in a two-year prohibition on possession of similar animals that became permanent after the second conviction. Former RCW 16.52.200(4)(a), (c) (2016). But the right of possession could be restored in such cases upon the defendant's petition to a court. *See* former RCW 16.52.200(5). The legislature took care to fine-tune the punishment for animal cruelty and allows leniency for lesser versions of Doll's offense if the defendant presents evidence of

rehabilitation. Only defendants convicted of the most severe form of animal cruelty are more permanently prohibited from animal ownership.[4]

Although there is no completely analogous provision, Washington does revoke the right to own or possess certain privileges and property items when an individual has demonstrated a lack of regard for that privilege or property. The legislature has taken a clear stance on the consequences for animal cruelty. Under Washington law, animals are property, and nothing in this case indicates that we should begin comparing them to children. Furthermore, relationships with animals are not constitutionally protected. The legislature has nevertheless crafted a nuanced statute that allows individuals convicted of lesser degrees of animal cruelty involving recklessness or negligence to petition for restoration of their right to possess similar animals to those they harmed. We will not upset the delicate balance the legislature struck when it imposed differing punishments for different levels of animal cruelty.

Doll's actions were intentional, and he plainly caused unnecessary suffering when he shot the cat through the spine without following up to confirm whether it was experiencing ongoing suffering. All four *Fain* factors weigh in favor of concluding it was not disproportionate to prohibit Doll from possession of similar animals, especially given the legislature's limitation of the lifetime ban only to the worst animal cruelty offenses.

---

[4] At oral argument, the State asserted for the first time that because first degree animal cruelty is a class C felony, Doll would have the option of seeking to vacate his conviction five years after discharge if he can meet all of the prerequisites in RCW 9.94A.640. We accepted a supplemental brief from Doll responding to this argument. Seeking to vacate his conviction may become an option for Doll under RCW 9.94A.640, but that does not change our analysis.

No. 55315-5-II

We hold that the lifetime prohibition on the ownership of similar animals in former RCW 16.52.200(4)(b) is not grossly disproportionate to the offense of first degree animal cruelty. Thus, the prohibition does not constitute cruel punishment in violation of article I, section 14.

B.     Eighth Amendment Challenge

If a sentence is not cruel under the Washington Constitution, "it is necessarily not cruel and unusual under the Eighth Amendment." *Moretti*, 193 Wn.2d at 820. Because the lifetime prohibition on owning similar animals does not constitute cruel punishment, it necessarily does not constitute cruel and unusual punishment that would violate the Eighth Amendment.

CONCLUSION

We affirm Doll's conviction for first degree animal cruelty. We hold that RCW 16.52.205(1) is not unconstitutionally vague as applied to Doll. And we hold that former RCW 16.52.200(4)(b) does not violate article I, section 14 or the Eighth Amendment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Maxa, J.

Veljaci, J.

21